**Louis Allen McDANIEL, Jr.,**
**Plaintiff-Appellant,**

v.

**The UNIVERSITY OF CHICAGO and Argonne, a corporation,**
**Defendants-Appellees.**

**No. 73–1438.**

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1974.

Decided March 14, 1975.
Rehearing and Rehearing En Banc
Denied April 15, 1975.

Robert J. Nye, Daniel N. Kadjan, Chicago, Ill., for plaintiff-appellant.

Wilfred F. Rice, Jr., Gerald D. Skoning, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and SPRECHER, Circuit Judges.

FAIRCHILD, Chief Judge.

Plaintiff McDaniel has appealed from a judgment dismissing his complaint in a class action against the University of Chicago.

The University had a contract with the United States for construction or alteration of Argonne National Laboratory. There is no question but that this government contract was subject to the provisions of the Davis-Bacon Act. Accordingly 40 U.S.C. § 276a required the specifications to "contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work" in the place of performance, and required any contract based on the specifications to contain certain stipulations concerning payment of mechanics and laborers by the contractor or subcontractor.

Plaintiffs claimed that they were employed pursuant to the contract, but were paid at rates substantially lower than the determined prevailing wages. The complaint purported to state five causes of action. The first was apparently based on the theory that a cause of action against the contractor is conferred by 40 U.S.C. § 276a–2(b) or should be implied from § 276a, and the second on the theory that the contract had been breached. Jurisdiction was predicated on 28 U.S.C. § 1331 (federal question) and § 1337 (action arising under Act regulating commerce). Three other causes of action suggest common law theories and pendent jurisdiction was claimed.

The same facts which subject the University's contract with the United States to the Davis-Bacon Act, 40 U.S.C. §§ 276a to 276a–7, also make it subject to the Miller Act, 40 U.S.C. §§ 270a–270e. Section 270a requires that before such a contract is awarded, the contractor shall furnish, in addition to a performance bond, "A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person."

Section 270b provides that "Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a . . . and who has not

been paid in full therefore [within a specified period] shall have the right to sue on such payment bond . . ." subject to specified conditions, including a limitation of jurisdiction of such action to the federal district court for the place of performance of the contract and prohibition of commencement after one year.

Turning to the Davis-Bacon Act, § 276a requires that the contract authorize withholding by the government of accrued payments to the extent considered necessary to pay laborers and mechanics the difference between the rates of wages required and the rates of wages received. Section 276a–2(a) authorizes direct payment of sums due to laborers and mechanics from sums withheld. It is undisputed, however, that no money was withheld in this instance.

Section 276a–2(b) provides:

"If the accrued payments withheld under the terms of the contract, as aforesaid, are insufficient to reimburse all the laborers and mechanics, with respect to whom there has been a failure to pay the wages required pursuant to sections 276a to 276a–5 of this title, such laborers and mechanics *shall have the right of action and/or of intervention against the contractor and his sureties conferred by law upon persons furnishing labor or materials,* and in such proceedings it shall be no defense that such laborers and mechanics accepted or agreed to accept less than the required rate of wages or voluntarily made refunds." (Italics ours.)

Clearly plaintiff and members of the class could have brought action under § 270b(a) within one year if a bond had been furnished. It is undisputed, however, that the University did not furnish a bond. Section 270e authorizes waiver of §§ 270a–270d as to certain types of projects. No claim has been made that waiver was unauthorized in the instant case and, indeed, the complaint, as distinguished from the brief on appeal, does not suggest that the claims are founded upon the University's failure to provide a bond.[1]

Thus plaintiff and members of the class (assuming as claimed that they were paid less than properly determined prevailing wages) have available to them neither direct payment by the government out of amounts withheld, nor an action on a Miller Act bond, the two remedies clearly contemplated by Congress.

The district court reluctantly concluded that the Davis-Bacon Act did not confer a right of action against the contractor, cognizable in federal court, under the circumstances alleged in the complaint. The language we have italicized above in § 276a–2(b) was deemed no more than a reference to the right of action on the Miller Act bond, set forth in § 270b.

We have no difficulty in agreeing that the terms of § 276a–2(b) do not create a cause of action, cognizable in federal court, for one in plaintiff's position.

For many years, beginning in 1894, the Heard Act required that the bond filed by certain government contractors include the obligation to "make payments to all persons supplying him or them labor and materials in the prosecution of

1. The Heard Act, predecessor to the Miller Act, was consistently interpreted as providing a cause of action and federal subject matter jurisdiction only when there was a bond extant which expressly included the obligation to "make payments to all persons supplying . . . labor or materials in the prosecution of the work provided for" in the government contract. The underlying statutory requirement to execute such a bond was not deemed sufficient to provide a federal action. See, *e.g.,* United States for the use of National Regulator Co. v. Montgomery Heating & Ventilating Co., et al., 255 F. 683, 684 (5th Cir. 1919); United States for the use of Felix Zambetti v. American Fence Co., 15 F.2d 449 (S.D.N.Y.1925), aff'd 15 F.2d 450 (2nd Cir. 1926); Strong v. American Fence Const. Co., 245 N.Y. 48, 156 N.E. 92, 93 (1927). The Miller Act has been similarly construed as not providing a federal cause of action for failure to provide a bond. *Cf.* Harry F. Ortlip Co. of Pennsylvania v. Alvey Ferguson Co., 223 F.Supp. 893, 894 (E.D.Pa.1963); Gallaher & Speck, Inc. v. Ford Motor Co., 226 F.2d 728, 731 (7th Cir. 1955).

the work provided for in such contract" and that upon the bond "said person or persons supplying such labor and materials shall have a right of action . . . " 28 Stats. 278.

In 1931, Congress enacted the provision of the Davis-Bacon Act which required the contract to provide "that the rate of wages for all laborers and mechanics employed by the contractor or any subcontractor in the public buildings covered by the contract shall be not less than the prevailing rate of wages for work of similar nature" in the locality. 46 Stat. 1494. No remedy was expressly provided, although it might well be supposed that an underpaid person might have a cause of action as a third-party beneficiary of the contract, particularly since the provision was required by law for his protection.

In 1935, two changes took place. On August 24, the Miller Act replaced the Heard Act, 49 Stat. 793, and on August 30, the Davis-Bacon Act was amended by inserting, among other things, the remedy provisions substantially in their present form. 49 Stat. 1011. Although the Miller Act preceded the Davis-Bacon amendments in enactment by six days, the Heard Act was in effect while the amendments were being drafted.

■ The language of the statutes, and the sequence of enactment referred to, make it clear that "the right of action" referred to in § 276a–2(b) meant, when drafted, the "right of action" on the bond conferred on persons supplying labor and materials by the Heard Act, and supplanted by "the right to sue on such payment bond" conferred on such persons by the Miller Act, § 270b(a).

This meaning was specified in the Senate Report accompanying the 1935 bill, as follows:

"Section 3(b) [§ 276a–2(b)]: When the funds withheld for such claimants are insufficient to reimburse all laborers and mechanics aggrieved by breach of the wage stipulations, this subsection gives such laborers and mechanics a cause of action on the contractor's bond, pursuant to the provisions of the Hurd [Heard] Act as amended from time to time (act of Aug. 13, 1894, 28 Stat. 278, U.S.C. title 40, sec. 230)." Sen.Rep.No.1155, 74th Cong., 1st Sess., 4 (1935). See remarks of Senator Walsh to the same effect. 79 Cong.Rec. 12073 (July 30, 1935).

■ Numerous provisions with respect to Portal to Portal Pay, 29 U.S.C. §§ 251–262, refer to liability or actions to recover minimum wages under the Davis-Bacon Act, as well as similar actions under the Fair Labor Standards Act of 1938 and the Walsh-Healey Act. Plaintiff refers particularly to § 255(a) which imposes a two year statute of limitations on such actions. Pointing out that 40 U.S.C. § 270b(b) prohibits a suit on the bond under the Miller Act after one year after the last performance of labor, plaintiff argues that the Davis-Bacon Act must contemplate a private right of action different from the right to sue on this bond. We do not read the Portal to Portal provisions with respect to actions under the Davis-Bacon Act as congressional recognition of conferral by § 276a–2(b) of a right of action other than on the bond. We do conclude, however, that it may well be recognition that wage-earners have or may have rights of action under the contractual provisions required by § 276a which may be enforced in state court actions or federal court actions where jurisdiction is properly based.[2]

2. The Miller Act's grant of subject matter jurisdiction, while underlying the right of action referred to in 40 U.S.C. § 276a–2(b) (Davis-Bacon), is "inseparably linked" to the statutory remedy of an action on the payment bond and thus cannot provide jurisdiction over a cause of action arising from the contractual commitment to pay "prevailing" wages imposed by § 276a(a). The Miller Act requirements that suit be brought in the name of the United States for the use of the person suing, that venue be limited to the district in which the contract was to be performed or executed, and the narrow one year limitation period are clearly designed to facilitate the orderly and equitable disposition of all competing rights in the bond and reenforce the conclusion that Miller Act subject matter ju-

Such a right of action is consistent with the congressional purpose in the Davis-Bacon Act: insuring the payment of "prevailing" wages to laborers and mechanics on all government contracts in excess of $2000. In a case in which the express remedies provided to fulfil this purpose, e.g., the withholding of accrued payments due the contractor by the government for direct payment to underpaid laborers and mechanics (40 U.S.C. § 276a(a)) and a suit on the required Miller Act payment bond (40 U.S.C. § 270b(a)), have proved ineffective, we should be especially "alert to provide such remedies as are necessary to make effective the congressional purpose." J. I. Case v. Borak, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964).[3]

■ Plaintiff alleges that jurisdiction is predicated upon 28 U.S.C. § 1337 which provides in pertinent part:

"The district courts shall have original jurisdiction of any civil action . . . arising under any Act of Congress regulating commerce."

The scope of jurisdiction granted by this provision has been broadly construed. In Murphy v. Colonial Federal Savings and Loan Ass'n, 388 F.2d 609, 614–15 (2nd Cir. 1967), the court, Judge Friendly writing, held that the provision encompassed any actions arising under "all acts whose constitutional basis is the commerce clause" and that "to found jurisdiction upon § 1337, it is not requisite that the commerce clause be the exclusive source of Federal power; it suffices that it be a significant one." See also, Imm v. Union R.R., 389 F.2d 858, 860 (3rd Cir. 1961), cert. denied, 368 U.S. 833, 82 S.Ct. 55, 7 L.Ed.2d 35; Sosa v. Fite,

465 F.2d 1227 (5th Cir. 1972); Moreno v. United States Dep't of Agriculture, 345 F.Supp. 310, 312–13 (D.D.C.1972), aff'd 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); C. Wright, Law of Federal Courts (2nd ed. 1970) at p. 109 and cases cited in note 33.

We conclude that the commerce clause constitutes a significant constitutional basis underlying the Davis-Bacon Act's validity. The requirement that all specified government construction contracts contain an express commitment to pay local "prevailing" wage rates as determined (in case of dispute) by the Secretary of Labor was first enacted in 1931, c. 411, § 1, 46 Stat. 1494. The committee report, Sen.Rep.No.1494, 71st Cong., 3rd Sess. (1931), makes clear that the Act was designed to "provide a more equable distribution of employment . . . and [to] generally benefit the country at large" by preventing government contractors from importing migratory labor at substantially less than prevailing wages. The country was then in the midst of a serious economic depression and government construction projects were considered an important element of recovery through the employment opportunities they provided. One basic premise of this legislation was to foster economic stability throughout the nation by requiring that those employed on federal projects receive fair and equitable wages. While Congress (possibly because of narrow views of federal jurisdiction then widely held) elected to limit its attention to federal construction projects, and other constitutional provisions doubtless exist which provide additional bases of legislative power, we think a sufficient nexus exists with the commerce clause to found jurisdiction upon § 1337.[4]

---

risdiction is limited to suits on the bond. See United States v. Illinois Surety Co., 253 Pa. 557, 98 A. 730 (1916); Strong v. American Fence Co., 245 N.Y. 48, 156 N.E. 92 (1927); and note 1, *supra*, and cases cited therein.

3. Where the express remedies provided depend, as here, on governmental enforcement (of both the withholding provision and the bond requirement), "the guarantee [of "prevailing" wages] . . . might well prove

an empty promise unless the private citizen were allowed to seek judicial enforcement . . . ." Allen v. State Board of Elections, 393 U.S. 545, 557, 89 S.Ct. 817, 827, 22 L.Ed.2d 1 (1968).

4. The Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., reflecting a similar intent to forbid the payment of substandard wages, cf. 29 U.S.C. § 202(a), imposed a minimum wage requirement upon employers and was

■ We therefore conclude that plaintiff's complaint, in that it sought to enforce defendant's contractual commitment to pay "prevailing" wages as determined by the Secretary of Labor, stated a cause of action under the Davis-Bacon Act for which relief could be granted and that subject matter jurisdiction was properly based upon 28 U.S.C. § 1337.[5] Once the district court had jurisdiction over this cause of action, it also had pendent jurisdiction to decide the state claims, arising out of the same facts, which were asserted in counts 3 through 5. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, the judgment dismissing the complaint is reversed and the cause is remanded for further proceedings consistent with this opinion.

held to constitute a proper legislative utilization of the commerce power. United States v. Darby, 312 U.S. 100, 117–124, 61 S.Ct. 451, 85 L.Ed. 609 (1941).

5. It is also alleged that jurisdiction is predicated upon 28 U.S.C. § 1331. Not only must the matter in controversy arise under federal law, but must exceed $10,000. The complaint indicates only that the accumulated claims of members of the class exceed that amount. Such cumulation does not suffice either in diversity or federal question cases. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); National Treasury Employees Union v. Nixon, 160 U.S.App.D.C. 321, 492 F.2d 587, 592 (1974).