Louis Allen McDANIEL, Jr.,
Plaintiff-Appellant,

v.

The UNIVERSITY OF CHICAGO and Argonne, a corporation,
Defendants-Appellees.

No. 73–1438.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 30, 1976.

Decided Jan. 21, 1977.

Daniel N. Kadjan, Hugh B. Arnold, Robert J. Nye, Chicago, Ill., for plaintiff-appellant.

Gerald D. Skoning, Wilfred F. Rice, Jr., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and SPRECHER, Circuit Judges.

FAIRCHILD, Chief Judge.

The question before us is whether, in light of *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975), and *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), Section 1 of the Davis-Bacon Act, 40 U.S.C. § 276a, contains an implied private right of action for the benefit of laborers and mechanics who are not paid the prevailing wage in their locality. The facts and history of the case are reported at 512 F.2d 583 (7th Cir. 1975), where we held that the Davis-Bacon Act did contain an implied private cause of action, and that jurisdiction rested on 28 U.S.C. § 1337. The Supreme Court of the United States granted *certiorari,* vacated the judgment and remanded

for consideration in light of the two abovementioned cases, which were decided subsequent to our decision in *McDaniel.* 423 U.S. 810, 96 S.Ct. 20, 46 L.Ed.2d 30.

In *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2087 the Supreme Court specified the relevant factors to be considered by any court in determining whether a private remedy is implicit in a federal statute.

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted' . . . , (citation omitted, emphasis supplied by Supreme Court) . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? (Citation omitted.) Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? (Citation omitted.) And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

At issue in *Cort* was a criminal statute, 18 U.S.C. § 610, prohibiting corporations from making "a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors . . . are to be voted for." Considering the factors set out above, the Supreme Court held first that complainant citizens or stockholders were barred from enjoining alleged violations of § 610 in future elections because a statute passed after the filing of the suit, but prior to the Supreme Court's review, established an administrative procedure for processing complaints of § 610 violations; and that as far as an implied private right of action for damages was concerned, the primary congressional goals in passing § 610 had been eliminating corporate influence over elections and preventing corporate officials from contributing corporate funds without the consent of the stockholders. The statute had not been passed for the "especial" benefit of the shareholders.

Second, the Court noted that nothing in the legislative history of § 610 suggested a congressional intention to confer on shareholders a federal right to damages for violation of § 610. In examining the legislative history, the Court stated that in a case where the statute clearly granted a class of persons certain rights, it is not necessary to show an explicit congressional intention to create a private cause of action, although an explicit purpose to deny a private cause of action would be controlling. But in a case like *Cort*, where it was at best doubtful that Congress intended to vest rights in the plaintiff class, the Supreme Court concluded that absence of a suggestion in § 610's legislative history of a suit for damages strongly suggested a congressional intention to the contrary.

Third, the remedy of damages would not have served the purposes of the primary congressional goals. Repayment by corporate officials of funds contributed to political campaigns would not remedy the evil legislated against (corporate political influence), and would have had a minimal, if any, deterrent effect. Thus, concluded the Supreme Court, no private right of action was implicit in the criminal statute.[1]

Fourth, the Court deemed it appropriate to relegate stockholders similarly situated to whatever remedy is created by state law. The fact that there might be no remedy under the law of some states would not hinder the primary goal.

Similar reasoning is apparent in *Securities Investor Protection v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975), and in *Passenger Corp. v. Passenger Assn.*, 414 U.S. 453, 457–58, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974), (hereafter "Amtrak"), on which *Securities Investor* heavily relies. In *Securities Investor*, the question was whether customers of failing broker-dealers had an implied private right of action under the Securities Investor Protection Act of 1970 (SIPA), 15 U.S.C. § 78aaa *et seq.*, to compel the Securities Investor Protection Corporation (SIPC) to exercise its statutory authority for their benefit. The SIPC was a non-profit corporation designed by Congress to afford limited financial relief for losses suffered by customers of failing broker-dealers.

In holding that no private right of action was implicit in 15 U.S.C. § 78aaa *et seq.*, the Court stressed several factors. First, the very structure of the SIPC and SEC yielded a strong inference against private causes of action. The SIPC is a non-profit, corporate entity, designed to deal with a public problem, and is substantially supervised by the SEC. The SIPC's practice was to defer intervention, if at all possible, to enable endangered firms to avoid collapse by infusion of new capital or merger. *Securities Investor, supra*, 421 U.S. at 421, fn. 4, 95 S.Ct. 1733. In this respect, suit for liquidation at the whim of the individual investor might be antithetical to the whole thrust of the statute. *Securities Investor, supra*, 421 U.S. at 422–23, 95 S.Ct. 1733; *Cort v. Ash, supra*, 422 at 78, 84, 95 S.Ct. 2080.

Second, a private cause of action would have been inconsistent with the very terms of the statute at issue. The respondent in *Securities Investor* argued that since 15 U.S.C. § 78ccc(b)(1) provided that since the SIPC can "sue and be sued, complain and defend, in its corporate name and through its own counsel, in any court, State, or Federal," Congress must have intended that an aggrieved customer of a member firm would be able to sue. However, 15 U.S.C. § 78ggg(b) limits SEC actions "to the district court of the United States in which the principal office of SIPC is located." As the Supreme Court pointed out, "It would be anomalous for Congress to have centralized SEC suits for the apparent convenience of the SIPC while exposing the corporation to substantively identical suits by investors 'in any court, State or Federal.'" 421 U.S. at 420, fn. 3, 95 S.Ct. at 1738.

Finally, conceding that Congress' primary purpose in enacting the SIPA and creating

---

1. This is not to say that a private right of action may never be implied in a criminal statute. *See Cort, supra*, 422 U.S. at 79, 95 S.Ct. 2080.

the SIPC was the protection of individual investors, *Securities Investor,* 421 U.S. at 421, 95 S.Ct. 1733, the Court held that the other two factors, set out in *Cort* as well, of congressional intent and the consonance of the remedy with the purposes of the statute, were predominant.

Before turning to the facts of the case before us, we must also consider *Amtrak, supra,* 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646. Although not explicitly cited in the remand from the Supreme Court, *Amtrak* was heavily relied on by the Court in *Securities Investor,* and for that reason commands our attention. The question in *Amtrak* was whether a private right of action was implied in the Amtrak Act, 45 U.S.C. § 501 *et seq.* The respondent National Association of Railroad Passengers (NARP) sought to enjoin the announced discontinuance of certain passenger trains that had previously been operated by the petitioner Central of Georgia Railway. The Court of Appeals for the District of Columbia held that the Amtrak Act contained an implied private right of action. *Potomac Passengers Ass'n v. Chesapeake & Ohio Ry. Co.,* 154 U.S.App.D.C. 214, 475 F.2d 325, 340 (1973), *reversed sub nom. Passenger Corp. v. Passenger Assn.,* 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). In reversing, the Supreme Court apparently assumed for the sake of argument that railroad passengers were the intended beneficiaries of the Amtrak Act; *Amtrak, supra,* 414 U.S. at 457–58, 94 S.Ct. 690. *Cf. Cort v. Ash, supra,* 422 U.S. at 80–82, 95 S.Ct. 2080. However, with regard to the other two important concerns, *i. e.,* whether such a remedy would serve the underlying purpose of the statute, the Court found against NARP. Specifically, there was extensive evidence in the legislative history that the Congress contemplated no private right of action, and implication of a private right of action would have been at odds with the underlying purposes of the statute. As the Court noted, a holding that the Amtrak Act contained a private right of action would have been merely to substitute the federal district courts for the various administrative bodies formerly used to pass on proposed discontinuances, and " . . . would completely undercut the efficient apparatus that Congress sought to provide for Amtrak to use in the 'paring of uneconomic routes.'" *Amtrak, supra,* 414 U.S. at 463, 94 S.Ct. at 696.

Thus, in the light of *Cort* and *Securities Investor,* our inquiry in the case before us is in four parts. First, we must determine whether a laborer like the members of the plaintiff class is the "especial" beneficiary of the Davis-Bacon Act. *Cort, supra,* 422 U.S. at 78, 95 S.Ct. 2080. If he is not, that may well dispose of the case at the outset. If he is, we have only passed the first hurdle. *Cf. Securities Investor, supra,* 421 U.S. at 421, 95 S.Ct. 1733.

Second, we must determine whether the legislative history or the language of the Act itself reveals a congressional intent to deny a private right of action. Clear evidence of an intent to deny a private remedy would be controlling, although absence of evidence of a legislative intent to create a private cause of action would not necessarily be fatal to the plaintiffs' case if we find that they were granted rights by the Davis-Bacon Act. *Cort, supra,* 422 U.S. at 82, 95 S.Ct. 2080.

Third, we must determine whether a private right of action in this case would be necessary or even capable of effectuating the purpose of the Act. *Cf. Cort, supra,* 422 U.S. at 84, 95 S.Ct. 2080; *Securities Investor, supra,* 421 U.S. at 420–23, 95 S.Ct. 1733; *Amtrak, supra,* 414 U.S. at 461–64, 94 S.Ct. 690.

Finally, we must consider whether the cause of action is one traditionally relegated to state law.

We must consider, then, whether the plaintiff class of laborers and mechanics are the "especial" beneficiaries of the Davis-Bacon Act, 40 U.S.C. § 276a *et seq.* We conclude that they are. Defendant-appellee University of Chicago contends, citing S.Rep.No.963, 88th Cong., 2nd Sess. (1964), U.S.Code Cong. & Admin.News 1964, p. 2339, that the Davis-Bacon Act was passed in 1931 for a variety of reasons: (a) that

local contractors be protected from unfair competition; (b) that local craftsmen not be denied work by contractors who recruited labor from distant cheap labor areas; and (c) that local communities not lose the working ability and purchasing power of their citizens.

But for the plaintiff class to be the special beneficiaries does not mean that they must be the exclusive beneficiaries; that local contractors and communities may benefit from the Act does not mean that it was not principally directed toward the laborers and mechanics. The Davis-Bacon Act by its terms mandates that the contract between the federal government and the contractor provide that laborers and mechanics hired by the contractor be paid the minimum wages determined by the Secretary of Labor to be prevailing for the corresponding class of laborers in the locality. The laborer is not only the principal beneficiary of the statute, but also a third-party beneficiary of a contract provided for by the statute.[2] Moreover, the legislative history of the Davis-Bacon Act and subsequent congressional comment on the Act reveals that the fundamental purpose of the Act was to benefit laborers and mechanics by paying them wages prevailing in private industry:

"The purpose of this measure is to require contractors and subcontractors engaged in constructing, altering or repairing any public building of the United States or of the District of Columbia situated within the geographic limits of the United States to pay their employees the prevailing wage rates when such wage rates have been established by private industry." Statement of the Committee on Labor recommending passage of the Davis-Bacon Act to the House of Representatives, 71st Cong., 3rd Sess., H.R.Rep. No.2453 (January 31, 1931).

"Almost from the inception of Federal construction activity Congress recognized the necessity for providing basic wage protection to local laborers and mechanics employed on the construction. *It was precisely for the purpose of providing this protection that Congress passed the Davis-Bacon Act more than 30 years ago.* Virtually all segments of our society banded together to demand its adoption." (Emphasis added.) S.R.No.963, 88th Cong., 2nd Sess. (March 17, 1964), 2 U.S. Code Congressional and Administrative News 2340.

Moreover, the Supreme Court of the United States recognized in *United States v. Binghamton Const. Co., Inc.,* 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1954) that laborers are the primary beneficiaries of the Davis-Bacon Act:

"The language of the [Davis-Bacon] Act and its legislative history plainly show that it was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor under wages on Government projects." 347 U.S. at 176–77, 74 S.Ct. at 441.

The Court further stated:

"On its face, the [Davis-Bacon] Act is a minimum wage law designed for the benefit of construction workers." 347 U.S. at 178, 74 S.Ct. at 442.

We thus conclude that the Davis-Bacon Act was passed for the special benefit of the plaintiff class in this case.

We turn next to the question whether the language of the Act itself or its legislative history reveals a congressional intent to grant or deny a private right of action.

At the outset, we reject appellant's argument that 40 U.S.C. § 276a–2(b) explicitly gives laborers and mechanics a private right of action. We adhere to our prior opinion that the language in § 276a–2(b) applies only to the right of action on a Miller Act bond, set forth in § 270b. *See McDaniel v. The University of Chicago,* 512 F.2d 583, 585–86 (7th Cir. 1975), *vacated and remand-*

---

**2.** As we note below, this status as a third-party beneficiary might well support an action for breach of contract in state court, or in federal court if diversity jurisdiction were satisfied. See *McDaniel,* 512 F.2d at 586.

*ed on other grounds*, 423 U.S. 810, 96 S.Ct. 20, 46 L.Ed.2d 30 (1975).[3]

We equally reject appellee University of Chicago's reliance on the legislative history of a bill sponsored by Congressman Goodell of New York which was ultimately defeated. The Goodell Bill, H.R. 9590, 88th Cong., 2nd Sess. (1964) dealt with the narrow issue of judicial review of the Secretary of Labor's determination of prevailing fringe benefits, and was offered as an Amendment to H.R. 6041 which provided that fringe benefits be included in the Secretary of Labor's determination under the Davis-Bacon Act.[4] The Congress did defeat Congressman Goodell's Amendment, but the issue of judicial review of the Secretary of Labor's determination of prevailing fringe benefits is not even remotely at issue in this case.

There is, however, evidence in other statutes, read *in pari materia* with the Davis-Bacon Act, that reveals a congressional recognition that laborers have rights of action under the contractual provisions required by 40 U.S.C. § 276a. The Portal-to-Portal Pay Act, 29 U.S.C. §§ 251–62, provides that a *two* year statute of limitations applies to any cause of action for unpaid minimum wages under the Davis-Bacon Act, *see* 29 U.S.C. § 255; and specifically contemplates a class action under the Davis-Bacon Act, *see* 29 U.S.C. § 256. The Miller Act, however, provides a *one* year statute of limitations on suits on the Miller Act bond, *see* 40 U.S.C. § 270b. Unless the Portal-to-Portal two year statute of limitations on Davis-Bacon actions is a nullity, Congress must have recognized that laborers are able to sue at least as third-party beneficiaries of the contract required by 40 U.S.C. § 276a in state court or in federal court if there were proper jurisdiction. *See McDaniel, supra*, 512 F.2d at 586.

Next, we consider whether an implied private right of action would be necessary or even capable of effectuating the purposes of the Davis-Bacon Act. Unlike the statutes at issue in *Cort* and *Securities Investor*, the Davis-Bacon Act contemplates by its terms some private enforcement. Specifically, 40 U.S.C. § 276a–2 provides that laborers and mechanics shall have a right of action against the contractor and his sureties if they have not been paid the required wages, and if the funds (if any) withheld by the government are insufficient to make them whole.[5] This case is unlike *Cort*, where the plaintiffs sought to benefit from a statute passed for a different end. It is unlike *Securities Investor*, where the relief sought would have undermined the statutory purpose of shoring up financially endangered brokerage houses, or *Amtrak*, where a private right of action would have introduced a new evil (the possibility of conflicting results among various federal district courts). The Davis-Bacon Act already contemplates under some circumstances a private action, on a Miller Act bond, to provide laborers with a remedy. But a bond only insures the solvency of the defendant, *i. e.*, that the remedy will be worth something. The policy behind the remedy itself, private suit, is not really in question.

Moreover, this case is a good example of how the governmental remedies specifically provided in the Act can be ineffective in accomplishing the congressional purpose.

---

**3.** In *United States v. Binghamton Const. Co.*, 347 U.S. 171, 176 (fn. 12), 74 S.Ct. 438, 98 L.Ed. 594, the Court refers to the right of action conferred by 40 U.S.C. § 276a–2(b), without mentioning the Miller Act. We do not, however, read this as an indication by the Court that a right of action independent of the Miller Act is explicitly provided by § 276a–2(b).

**4.** The bill that Goodell sought to amend, H.R. 6041, was ultimately passed by the Congress.

**5.** As noted above in this opinion, we have construed this expressly conferred right of action

to be a suit on the bond. Appellee University of Chicago makes the point that such a suit must be brought in the name of the United States for the use of the person suing, *see* 40 U.S.C. § 270b(b) and hence it is not really a private remedy. We reject this argument. Although the United States is the nominal plaintiff, the laborer or mechanic retains real control of the lawsuit, including whether to bring it in the first place. In substance, it is a private cause of action.

The Executive did not withhold funds from the contractor, see 40 U.S.C. § 276a; did not require a bond from the contractors, see 40 U.S.C. § 270a and 270b(a); and did not invoke the sanctions of termination, see 40 U.S.C. § 276a–1, or blacklisting, see 40 U.S.C. § 276a–2(a).

Finally, although an action for breach of an employment contract is traditionally a state court action, the right to recover the unpaid portion of the prevailing wage is based on the congressional choice of a federal policy. Unlike the situation presented in *Cort*, the failure of a state to grant a recovery to a laborer, suing as a third-party beneficiary, would tend to defeat the federal policy if a federal remedy did not exist.

The appellee University of Chicago argues disingenuously that it would be somehow inequitable to allow a private right of action in this case, because " . . . if a government contract is let which does not demand prevailing wages and bonds, and the contractor bids or negotiates on that possibly lesser-cost basis, a later date complaint by an employee addressed to the contractor alone is obviously aimed in error." Appellee's brief at 10, this hypothetical rendition of the case is extremely misleading. While it is true that no bond was exacted in this case, the plaintiffs-appellants allege that the government contract with appellee *did* contain the prevailing wage requirement, and appellee does not deny it.[6] The district court, although deciding in favor of appellee, conceded that the plaintiffs might have a cause of action in state court, presumably as third-party beneficiaries of the contract. Assuming the facts alleged, the contractor in this case has been unjustly enriched by contracting on the basis of prevailing wage costs, while in fact paying less than the prevailing wage.

In sum, we hold that implying a private right of action in the Davis-Bacon Act is necessary to effectuate the intention of Congress in passing the statute. Unless we read *Cort* and *Securities Investor* to require

an explicit statement of congressional intent before an implied remedy may be found in any case, *cf. Cort, supra*, 422 U.S. at 82, 95 S.Ct. 2080, we find an implied right of action here.

*Cort* and *Securities Investor*, the two cases cited in the judgment of the Supreme Court ordering remand, dealt almost exclusively with the implication of remedies, and provide no guidance on the question whether there is federal court jurisdiction of a cause of action if implied. In *McDaniel*, 512 F.2d at 587–88, we held that federal court jurisdiction over this case is found in 28 U.S.C. § 1337. We do not understand that the Supreme Court directed a reconsideration of the jurisdictional issue, and the parties (except for an *amicus*) have not argued it in their briefs on remand. We adhere to our decision on the point.

The judgment dismissing the complaint is reversed and the cause is remanded for further proceedings consistent with this opinion and with the opinion filed March 15, 1975.

---

6. Nor is there any question in this case concerning the Secretary of Labor's determination of the prevailing wages in the relevant time and area. *See* Federal Register, Vol. 36, No. 157, August 13, 1971, pp. 15150 *et seq.*