318 F.3d 80
 Jan GROCHOWSKI, Jerzy Klosek, Miroslav Sidor, Jan Statkiweicz, Henryk Supinski, Andrzej Wiktoruk, Janusz Wysocki, Andrzej Zmijewski, and Roman Kakol, Plaintiffs-Appellants,
v.
PHOENIX CONSTRUCTION, Ypsilon Construction Corporation, Inc., John Giavris, George Gizanis, Republic Western Insurance Company, Utica Mutual Insurance Company, Defendants-Appellees,
Ajet Construction Corp., Cos Construction Corporation, Spiro Gazgalis, Sebastianos Diakogiannis, International Fidelity Insurance Company, Defendants-Appellees,
Colonia Insurance Company (Uk) Limited, and Titan Indemnity Company, Defendants.
 Docket No. 01-7569.
 United States Court of Appeals, Second Circuit.
 Argued: September 17, 2002.
 Decided: January 14, 2003.
 
 COPYRIGHT MATERIAL OMITTED Randall D. Bartlett, Bartlett & Bartlett LLP, New York, New York, for Plaintiffs-Appellants Jan Grochowski, Jerzy Klosek, Miroslav Sidor, Jan Statkiweicz, Henryk Supinski, Andrzej Wiktoruk, Janusz Wysocki, Andrzej Zmijewski, and Roman Kakol.
 Richard J. Flanagan, Flanagan, Cooke & French, LLP, New York, New York, for Defendants-Appellees Ajet Construction Corp., Spiro Gazgalis, and International Fidelity Insurance Company.
 Mario Biaggi, Jr., Biaggi & Biaggi, New York, New York, for Defendants-Appellees Phoenix Construction Corp., Ypsilon Construction Corp., John Giavris, George Gizanis, Republic Mutual Western Insurance Company, and Utica Mutual Insurance.
 Before: McLAUGHLIN and CABRANES, Circuit Judges, and LYNCH, District Court Judge.*
 McLAUGHLIN, Circuit Judge.
 
 
 1
 The plaintiffs appeal several determinations of the United States District Court for the Southern District of New York (Buchwald, District Judge). The plaintiffs raise the following issues: (1) whether their state-law claims for recovery of prevailing wages and overtime pay should have been dismissed; (2) whether the plaintiffs should have been permitted to amend their complaint to add a claim under Article 6 of New York's Labor Law; (3) whether their FLSA claims for unpaid overtime compensation should have been limited to one-and-a-half times the hourly rates actually paid, rather than one-and-a-half times the prevailing hourly rates; and (4) whether the district court should have directed a verdict against the four nontestifying plaintiffs.
 
 
 2
 For the reasons that follow, we affirm each of the district court's determinations.
 
 BACKGROUND
 
 3
 The appellants are nine plaintiffs who were employed as roofers and bricklayers on three separate public works construction projects. The defendants-appellees are contractors involved in these projects, their officers, and the insurance companies that served as sureties on construction payment bonds for those projects.
 
 
 4
 The contractor defendants are Ypsilon Construction Corporation, Inc. ("Ypsilon"), Phoenix Construction Corporation ("Phoenix") and Ajet Construction Corporation ("Ajet"). All three are construction companies.
 
 
 5
 The insurance defendants are Republic Western Insurance Company ("Republic"), Utica Mutual Insurance Company ("Utica") and International Fidelity Insurance Company ("IFIC"). All three companies are sureties on construction payment bonds.
 
 
 6
 Three construction projects are involved and each contract involves the New York City Housing Authority ("NYCHA") as owner of three public housing developments — the Fulton Houses, the Lillian Wald Houses and the Queensbridge Houses.
 
 
 7
 NYCHA hired Ypsilon to perform exterior brick repair at the Fulton Houses (the "Fulton Project"), Phoenix to perform asbestos abatement and roofing renovations on the Lillian Wald Houses (the "Wald Project"), and Phoenix and Ajet, as a joint venture (the "Joint Venture"), to perform roofing renovations, asbestos abatement and brickwork repair at the Queensbridge Houses (the "Queensbridge Project"). All three NYCHA projects were federally funded.
 
 
 8
 Each project, of course, was subject to a separate contract but all contract provisions relevant to this appeal were identical. The General Conditions of each contract required that workers on the projects be paid wage rates and supplemental fringe benefits prevailing at the time the work was performed. The General Conditions of each contract stated that the Davis-Bacon Act, 40 U.S.C. § 276a, et seq. ("DBA"), and the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 327, et seq. ("CWHASSA"), were specific labor standards provisions applicable to all federally funded contracts. Section 42(a) of the General Conditions provided that "[t]he Contractor shall pay to all laborers and mechanics employed in the work not less than the wages prevailing in the locality of the Project, as predetermined by the Secretary of Labor of the United States pursuant to the Davis-Bacon Act (Title 40, U.S.C., Sections 276a — 276a-5)."
 
 
 9
 The plaintiffs sued in the United States District Court for the Southern District of New York (Kaplan, District Judge) to recover unpaid prevailing wages and overtime compensation allegedly owed them for their labor on all three projects. The plaintiffs invoked the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), the CWHASSA and New York State common law.
 
 
 10
 The district court issued a scheduling order setting the deadline for reply on all pleadings for late December 1997. The pretrial order was filed in June 1998. On consent of the parties, the case was transferred to then Magistrate Judge Buchwald for all pretrial purposes.
 
 
 11
 Several defendants moved to dismiss for failure to state a claim, while others moved for summary judgment. Immediately following oral argument on April 17, 1999, Magistrate Judge Buchwald dismissed the plaintiffs' CWHASSA claims, holding that the statute does not create a private right of action. The district court also dismissed the plaintiffs' state-law claims because state common law remedies are not available to recover prevailing wages under the federally funded contracts. The district court also held that the DBA, the statute applicable to federal contracts, does not afford the plaintiffs a private right of action.
 
 
 12
 The plaintiffs requested reconsideration of the district court's dismissal of their state-law claims and also moved to amend their complaint to add a claim under Article 6 of the New York Labor Law. The district court denied reconsideration as well as the plaintiffs' motion to amend the complaint, citing the plaintiffs' undue delay in bringing the motion. Grochowski v. Ajet Construction Corp., 1999 WL 688450, *1 (S.D.N.Y. Sept.2, 1999).
 
 
 13
 Subsequently, in response to additional motions by several defendants for summary judgment, now District Judge Buchwald pared the plaintiffs' claims down to one remedy: the unpaid minimum wages, if any, and unpaid overtime in the amount of one and one-half times the hourly rates actually paid. Grochowski v. Ajet Construction Corp., 2000 WL 1159640 (S.D.N.Y. Aug. 16, 2000). The case went to a jury trial on the limited issues of minimum wages and time-and-a-half for overtime under the FLSA.
 
 
 14
 The claims of only five of the original nine plaintiffs were submitted to the jury. Two of the plaintiffs who lived in New York chose not to appear at trial. Two other plaintiffs lived in Poland and did not return to the United States. Plaintiffs' counsel did not take their depositions, despite the opportunity to do so via telephone shortly before trial. After the plaintiffs rested at trial, the district court granted judgment as a matter of law against the four non-testifying plaintiffs on the ground that they failed to present sufficient evidence for the jury to make a reasonable inference as to the hours worked or wages paid.
 
 
 15
 The jury awarded each of the five remaining plaintiffs approximately $26,000.00 — double the unpaid wages of $13,000.00 because of the defendants' willful conduct, a sanction permitted under the FLSA. 29 U.S.C. § 216(b).
 
 
 16
 The plaintiffs make the following claims on appeal: (1) their state-law claims should not have been dismissed; (2) the plaintiffs should have been permitted to amend their complaint; (3) their FLSA claims should not have been limited to one-and-a-half times the hourly rates actually paid; and (4) judgment as a matter of law was improperly entered against the four non-testifying plaintiffs.
 
 DISCUSSION
 I. State Common-Law Claims
 
 17
 The plaintiffs' state-law claims for breach of contract and quantum meruit were dismissed on summary judgment. Thus, we review this issue de novo to determine whether the substantive law has been correctly applied. Republic Nat'l Bank of New York v. Delta Air Lines, 263 F.3d 42, 46 (2d Cir.2001).
 
 
 18
 The construction projects were federally funded and the contracts specifically provided that the DBA applied. The DBA requires that all laborers and mechanics working on federally funded construction projects be paid not less than the prevailing wage in the locality where the work is performed. 40 U.S.C. § 276a. Although the Supreme Court has not considered whether the DBA confers a private right of action on an aggrieved employee for back wages, the great weight of authority indicates that it does not. See, e.g., Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671, 676 (9th Cir.1998); Chan v. City of New York, 1 F.3d 96, 102 (2d Cir.1993); Weber v. Heat Control Co., 728 F.2d 599, 599-600 (3d Cir.1984).
 
 
 19
 In Chan v. City of New York, 1 F.3d 96 (2d Cir.1993), this Court indicated that a private right of action does not exist under the DBA. Id. at 102. In Chan, laborers under municipal contracts sued the contractor, the City of New York and the New York City Department of Housing Preservation and Development for back wages alleging that they were not paid prevailing wages as required — not by the DBA — but by the Housing Community and Development Act ("HCDA"). Id. at 99.
 
 
 20
 In determining that no private right of action exists under HCDA, we found an analogy in Congress' adoption of the DBA's regulatory scheme providing administrative remedies. Id. at 102. The Court determined that, although there is no statement that the administrative remedies are exclusive, there is simply no indication that, along with the cited regulatory mechanism, Congress intended to authorize private suits. Id.
 
 
 21
 It is an "elemental canon" of statutory construction that where a statute expressly provides a remedy, "courts must be especially reluctant to provide additional remedies." Karahalios v. Nat'l Fed'n of Employees, Local 1263, 489 U.S. 527, 533, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989) (citing Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979)). In such cases, "[i]n the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." Id. (quoting Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 15, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)) (internal quotation marks omitted).
 
 
 22
 Although the Court in Chan found that a civil rights action for the violation of the minimum wage provision was available under 42 U.S.C. § 1983, the Court differentiated between a private right of action conferred by statute and an action under § 1983. Id. at 103. The Court noted "the § 1983 inquiry begins with a presumption in favor of the right to bring suit, for the `general rule' is that § 1983 provides a remedy for violations of federal statutory rights unless `Congress has affirmatively withdrawn the remedy.'" Id. (quoting Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 509 n. 9, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)).
 
 
 23
 Here, the plaintiffs did not bring a § 1983 action. Nor did they allege claims directly under the DBA, but instead brought state-law claims for breach of contract as third party beneficiaries of the contracts and for quantum meruit. Unlike claims brought under § 1983, there is no presumption in favor of a right to bring suit for such common law claims.
 
 
 24
 At bottom, the plaintiffs' state-law claims are indirect attempts at privately enforcing the prevailing wage schedules contained in the DBA. To allow a third-party private contract action aimed at enforcing those wage schedules would be "inconsistent with the underlying purpose of the legislative scheme and would interfere with the implementation of that scheme to the same extent as would a cause of action directly under the statute." Davis v. United Air Lines, Inc., 575 F.Supp. 677, 680 (E.D.N.Y.1983) (internal quotation marks omitted) (rejecting common law contract claim as "end-run" around statute on remand after this Court held the Vocational Rehabilitation Act provided no private right of action).
 
 
 25
 The plaintiffs rely almost exclusively on the New York Court of Appeals case of Fata v. S.A. Healy Co., 289 N.Y. 401, 46 N.E.2d 339 (1943), for the proposition that, consistent with § 220 of the New York Labor Law employees can bring parallel actions seeking recovery of wages both under an administrative structure and through common-law remedies. However, the present contracts between the defendants and the NYCHA were federally funded and, as such, are governed by the prevailing wage requirements set forth in the DBA, not by § 220 of the New York Labor Law. Since in this case, unlike in Fata, no private right of action exists under the relevant statute, the plaintiffs efforts to bring their claims as state common-law claims are clearly an impermissible "end run" around the DBA.
 
 II. Denial of Leave to Amend
 
 26
 The plaintiffs also appeal the district court's denial of their letter motion to amend the complaint to add a claim under Article 6 of the New York Labor Law.
 
 
 27
 We review a district court's decision to grant or deny a party leave to amend a pleading under Federal Rule of Civil Procedure 15(a) for abuse of discretion. Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993). Similarly, a scheduling order ruling under Federal Rule of Civil Procedure 16(b) is also reviewed for abuse of discretion. Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir.2000).
 
 
 28
 Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend "shall be freely given," must be balanced against the requirement under Rule 16(b) that the Court's scheduling order "shall not be modified except upon a showing of good cause." Fed.R.Civ.P. 15(a), 16(b). A finding of good cause depends on the diligence of the moving party. Parker, 204 F.3d at 340 (citing In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir.1999)).
 
 
 29
 The district court issued a scheduling order setting December 24, 1997 as the deadline for reply on all pleadings. The pretrial order was filed on June 1, 1998. The plaintiffs moved to amend their complaint in August 1999 based on the June 2, 1998 decision of the New York State Appellate Division in Pesantez v. Boyle Envtl. Servs., 251 A.D.2d 11, 673 N.Y.S.2d 659 (1st Dep't 1998). The plaintiffs delayed more than one year before seeking to amend their complaint. Furthermore, when the motion was filed, discovery had been completed and a summary judgment motion was pending. On this record we cannot say that the district court abused its discretion in denying the plaintiffs' motion to amend.
 
 
 30
 III. Calculation of FLSA Overtime Compensation
 
 
 31
 The plaintiffs' challenge to the district court's calculation of the plaintiffs' FLSA claims for overtime compensation raises a question of statutory interpretation, which we review de novo. Goodrich Corp. v. Town of Middlebury, 311 F.3d 154, 177 (2d Cir.2002).
 
 
 32
 The plaintiffs contend that, under both the DBA and the contract between the defendants and NYCHA, their overtime compensation should have been calculated at time-and-a-half the prevailing hourly rates, rather than at time-and-a-half the hourly rates the plaintiffs were actually paid. Although the plaintiffs brought this claim under the FLSA, not the DBA, they now wish to apply the more generous prevailing wage structure of the DBA to their claim for unpaid overtime compensation.
 
 
 33
 The FLSA, however, serves a different purpose than the DBA. The DBA provides for the payment of locally prevailing wages for work on federally funded projects. 40 U.S.C. § 276a; see Universities Research Ass'n v. Coutu, 450 U.S. 754, 773-74, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981). In contrast, the FLSA requires employers to pay each employee a guaranteed minimum wage, and it does not address liability for underpayment of hours at prevailing wage rates. 29 U.S.C. § 206(a)(1).
 
 
 34
 Under the FLSA, employees may recover unpaid overtime compensation and an additional amount of liquidated damages. 29 U.S.C. § 216(b). The FLSA requires that employees be paid overtime compensation equal to at least "one and one-half times the regular rate at which [the employee] is employed," for all hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). Although the FLSA does not expressly define "regular rate" of pay, the Supreme Court has determined that it is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945) (citation omitted) (emphasis added).
 
 
 35
 Under the DBA, an aggrieved employee is limited to those administrative mechanisms set forth in the text of the statute. Chan, 1 F.3d at 102. The plaintiffs' attempt to use the FLSA to circumvent the procedural requirements of the DBA must fail. The plaintiffs' forum for determining prevailing wages is the NYCHA, which can consider all aspects of the plaintiffs' wages and hours and compute underpayment for overtime hours at one-and-a-half times the prevailing wage. Grochowski, 2000 WL 1159640, at *4.
 
 
 36
 For the foregoing reasons, the district court properly limited the plaintiffs' claims under the FLSA for unpaid overtime compensation to one-and-a-half times the hourly rates actually paid.
 
 
 37
 IV. Directed Verdict Against Non-Appearing Plaintiffs
 
 
 38
 The plaintiffs assert that the district court erred in directing a verdict against the four non-testifying plaintiffs. This Court reviews a district court's grant of judgment as a matter of law de novo, and we apply the same standard the district court was required to apply. Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir.2000).
 
 
 39
 An employee who sues for unpaid minimum wages or overtime compensation has the burden of proving that the employer did not compensate him for completed work. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Under the FLSA, even "[w]hen accurate records or precise evidence of the hours worked do not exist, `an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir.2002) (quoting Anderson, 328 U.S. at 687, 66 S.Ct. 1187). Although the plaintiffs correctly point out that not all employees need testify in order to prove FLSA violations or recoup back-wages, the plaintiffs must present sufficient evidence for the jury to make a reasonable inference as to the number of hours worked by the nontestifying employees. Herman v. Hector I. Nieves Transport, Inc., 91 F.Supp.2d 435, 446 (D.P.R.2000).
 
 
 40
 Andrzej Wiktoruk, Andrzej Zmijewski, Jerzy Klosek and Miroslav Sidor failed to submit any evidence whatsoever on their behalf. Wiktoruk and Zmijewski chose not to testify. Klosek and Sidor were residing in Poland at the time of the trial and declined to sit for depositions. Instead, these four plaintiffs relied on bits of testimony from various co-plaintiffs.
 
 A. Wiktoruk
 
 41
 With regard to Wiktoruk, plaintiff Jan Statkiweicz testified that Wiktoruk worked on the Fulton project, and that a standard work day at the site was eight hours. Janusz Wysocki also testified that Wiktoruk worked as a mason on the Fulton project, but did not specify Wiktoruk's hours or rate of pay. Likewise, Henryk Supinski testified that Wiktoruk worked on the Fulton project in 1994 and 1995, but did not supply any details about Wiktoruk's hours or pay. Ramon Kakol testified that Wiktoruk worked on the Wald project, but could not recall whether Wiktoruk worked with him the entire time Kakol worked there. Thus, there was no evidence establishing how many hours Wiktoruk worked on the Fulton and Wald projects or his rate of pay.
 
 B. Zmijewski
 
 42
 To establish the hours worked and rate paid to Zmijewski, the plaintiffs rely on Statkiweicz, who testified that he "usually" worked with Zmijewski at the Fulton project, and that both worked "[b]asically the same" hours from April to December 1994. In addition, Zmijewski's calendar was introduced to establish his hours in 1995. We note, however, that the plaintiffs fail to point to evidence of Zmijewski's rate of pay in their appellate briefs.
 
 C. Klosek
 
 43
 Statkiweicz and Wysocki testified that they worked with Klosek on the Fulton project. Statkiweicz stated that he worked on Saturdays with Klosek, but did not know if he worked on all Saturdays with Klosek "because people rotated." Wysocki did not indicate what days he may have worked with Klosek. As such, the jury could have no reasonable basis to determine how many hours Klosek worked or how much he was paid.
 
 D. Sidor
 
 44
 Finally, Wysocki testified that Sidor worked with him on the Wald, Futon and Queensbridge projects and that Sidor was his roofing partner on the Wald project. Wysocki also testified that Sidor was not paid more than nine dollars per hour. Although the evidence established what Sidor was not paid, there was no evidence establishing what he was paid. Furthermore, the plaintiffs adduced little evidence that would allow the jury to draw a reasonable inference about how many hours Sidor worked.
 
 
 45
 The corpus of evidence on behalf of the foregoing four plaintiffs was simply inadequate for a jury to determine whether their claims had any merit. Notably, none of the non-testifying plaintiffs point to any evidence establishing the amounts they were paid. In addition, there is only speculation to establish what hours these plaintiffs worked. Accordingly, the district court correctly granted the defendants' motion for judgment as a matter of law against the four non-testifying plaintiffs.
 
 CONCLUSION
 
 46
 For the reasons stated herein, we AFFIRM the judgment of the district court.
 
 
 
 Notes:
 
 
 *
 The Honorable Gerard E. Lynch, of the United States District Court for the Southern District of New York, sitting by designation
 
 
 
 47
 LYNCH, District Judge, dissenting.
 
 
 48
 I dissent from Part I of the Court's opinion.
 
 
 49
 The Davis-Bacon Act ("DBA") requires that every "contract ... to which the United States or the District of Columbia is a party, for construction ... of public buildings... of the United States" provide that the minimum wages to be paid to workers "shall be based upon the wages ... determined by the Secretary of Labor to be prevailing" for similar work in the locality where the work is to be performed. 40 U.S.C. § 276a. The Housing and Community Development Act ("HCDA") incorporates this requirement into "construction work financed in whole or in part with assistance received under this chapter." 42 U.S.C. § 5310(a). The contracts at issue in this case between the New York City Housing Authority ("NYCHA") and the defendant contractors contained clauses conforming to this requirement, by which the defendants promised that they would pay their workers according to specific schedules of "prevailing wages" published by the Secretary of Labor for the relevant categories of workers. The plaintiff workers assert, and for purposes of this appeal it is undisputed, (1) that under ordinary common-law principles of contract, as interpreted in New York, they are third-party beneficiaries of these contractual provisions entitled to bring an action to enforce them,[1] and (2) that in violation of the promises made in their contracts, the defendants did not pay plaintiffs the wages specified in the contracts.
 
 
 50
 One might have thought that the plaintiffs had pled a perfectly good cause of action. If the facts pled are true, as they must be taken to be for purposes of this discussion, the contractors entered binding contracts in which they promised NYCHA that they would pay the plaintiffs a specified wage, and they breached those contracts. New York law apparently permits the plaintiffs to enforce the contracts as third-party beneficiaries. Far from being contrary to any federal law or policy, the contractual obligations in question conform to a specific federal requirement that such contracts include exactly these promises, and the wages specified are precisely those established by the federal agency responsible for determining the locally-prevailing wages required to be paid by the federal statutes.
 
 
 51
 But despite a federal statute that effectively requires the wages to be paid, a specific promise by the contractors that they would pay the wages, and a state common-law rule that authorizes the plaintiffs to sue to enforce that promise, the majority declares that the contractors can break their promise, and that the workers have no judicial remedy to obtain the wages they were promised by Congress, the Labor Department, the New York courts, and the contractors themselves.
 
 
 52
 This, one might think, is a very peculiar result. Surely, some powerful legal reason must compel a conclusion so inconsistent with common sense, common law, and common justice. The majority's reasoning, however, boils down to two simple propositions: (1) the DBA and the HCDA do not themselves provide a private cause of action to enforce their terms, and (2) "the plaintiffs' efforts to bring their claims as state common-law claims are clearly an impermissible `end run' around" the DBA's failure to provide a private remedy. (Maj. Op. at 86.)
 
 
 53
 I have no quarrel with the first of these propositions. It is firmly established that there is (in this circuit) no implied right of action under the HCDA or, by implication, the DBA. Chan v. City of New York, 1 F.3d 96, 102 (2d Cir.1993).[2] But the plaintiffs have not based their claim directly on the HCDA and DBA; rather, they rely on the contracts between the state agencies and the plaintiffs' employers that require that plaintiffs be paid the wages listed on a schedule, specifically incorporated into the contracts, which derives from the schedules created by the Secretary of Labor to embody the "prevailing wages" determined under the DBA. Thus, to prevail, defendants must show not merely that there is no cause of action under the DBA, but that the DBA pre-empts or otherwise precludes state law remedies to which plaintiffs would otherwise be entitled. The weight of the majority's reasoning therefore rests not on the undisputed assertion that the DBA and HCDA do not provide them with a cause of action, but on its second proposition, that the plaintiffs may not make an "end-run" around the absence of a private right of action under the federal statutes.
 
 
 54
 That, I respectfully submit, is a slogan, not an argument. And it is an erroneous slogan at that. The very case that establishes for this circuit the absence of an implied action directly under the DBA directly refutes the majority's assertion that the DBA's statutory administrative remedy precludes not only an implied cause of action under that Act, but also any other remedies that effectively allow indirect enforcement of the DBA's requirements. In Chan v. City of New York, Judge Kearse wrote for the Court (1) that Congress did not intend to create a private right of action under the DBA, id. at 102, but (2) that "[t]he fact that a statute conferring substantive rights does not itself give its beneficiaries a private right of action to enforce it does not mean that the beneficiaries are without a private remedy." Id. at 102-03. Accordingly, the Court held that plaintiffs were entitled to sue for violations of the DBA under 42 U.S.C. § 1983. Id. at 106. The Court went on at considerable length to discuss and reject the argument that the comprehensiveness of the DBA administrative remedy scheme evinced a congressional intent to foreclose reliance on § 1983 to enforce the policies of the DBA where the other requirements for § 1983 relief were present. Id. at 104-06.
 
 
 55
 I am at a loss to see how the same scheme that is not sufficiently comprehensive to demonstrate a congressional intent to preclude § 1983 relief is sufficiently comprehensive to preempt state remedies. The majority fails to cite any actual evidence, in the language or legislative history of the DBA, that Congress intended to prevent state law contract suits based on contractual promises to pay DBA prevailing wages — promises that Congress specifically required to be written into contracts that it must have assumed would be enforceable, like any other contracts, under state law. Certainly, the majority cannot mean to argue that if the defendants had made a contract directly with the employees promising to pay the prevailing wage as determined by the Secretary of Labor under the DBA, and then breached that promise, the DBA would somehow deprive plaintiffs of their right to sue on an ordinary contract theory. I fail to see why the case is different where plaintiffs sue as third-party beneficiaries of a contract between the state agency and their employer rather than as promisees in their own right, where state contract law otherwise equates the situations.
 
 
 56
 The majority attempts to distinguish Chan by stating that there is a "presumption... that § 1983 provides a remedy for violations of federal statutory rights, ... [but] there is no presumption in favor of a right to bring suit for such common law claims." (Maj.Op. 85.) No authority is provided for the proposition that there is no "presumption" in favor of a right to bring common-law contract claims under the law of New York. Nor can there be, for of course there is something more than a presumption: If New York law provides a right or remedy, any plaintiff has an absolute right to invoke it, unless the New York law is contrary to or pre-empted by federal law. But the majority does not even make a pass at demonstrating that the DBA displaces state contract law, or that New York's willingness to enforce contractual promises to pay the prevailing wage is contrary to, rather than supportive of, the federal policy embodied in the DBA.[3]
 
 
 57
 Defendants have no equity here. They deliberately paid vulnerable immigrant workers less than what federal law, and defendants' own contracts with the NYCHA, required. The plaintiffs, on the other hand, appear to be immured in a regulatory scheme that has provided them no relief whatsoever. Chan establishes that there is no overpowering congressional or judicial policy of keeping DBA-derived rights out of the courts when some other source of law provides a remedy.[4] Claims based on state law theories will not unduly burden the federal courts, absent diversity of citizenship or the presence of other federal claims that will bring the cases here anyway. So what justifies interpreting a remedial statute enacted for the benefit of workers as containing an implicit shadow agenda — not reflected in any statutory language or legislative history — to preclude state law causes of action that would enforce contractual promises to comply with federal law?
 
 
 58
 Because the majority opinion does not provide a sufficient answer, I dissent.
 
 
 
 Notes:
 
 
 [1]
 The plaintiffs appear to be correct about this propositionSee Fata v. S.A. Healy Co., 289 N.Y. 401, 406-07, 46 N.E.2d 339 (1943). But the District Court did not address the question, holding that the DBA precludes reliance on such a theory, even if it is otherwise available under New York law. The majority agrees. Accordingly, there is no need to reach the state-law question.
 
 
 [2]
 Not all circuits agreeSee McDaniel v. University of Chicago, 548 F.2d 689, 695 (7th Cir.1977). The Supreme Court has recognized the conflicting authority without ruling on this issue. Universities Research Ass'n v. Coutu, 450 U.S. 754, 769, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981).
 
 
 [3]
 Defendants (but not the Court) cite cases holding that the DBA and regulations of the Housing Department pre-empt state laws requiring payment of ahigher wage than the DBA prevailing wage. (Phoenix Br. at 11-12.) But these cases rest on the argument that such laws contravene the federal policy against permitting state-mandated wages exceeding the DBA requirements to inflate the cost of federal contracts, and have no application to a state law that requires only compliance with the DBA wage.
 
 
 [4]
 Indeed, without questioning the correctness of this Circuit's holding that the DBA does not provide a private right of action in its own right, it is worth remembering that the Seventh Circuit thinks that far from precludingother judicial remedies, the DBA itself provides a private right of action. See McDaniel, 548 F.2d at 695. It is hard to see how a statute so ambiguous about private remedies can be seen to trump perfectly ordinary state contract law to which it makes no reference whatever.