**BOSSIER PARISH SCHOOL BOARD et al., Appellants,**

v.

**Ura Bernard LEMON et al., Appellees.**

**No. 22675.**

United States District Court
Fifth Circuit.

Jan. 5, 1967.

Rehearing Denied Feb. 6, 1967.

---

3. Order of September 17, 1965 (R. 155).

See also, D.C., 240 F.Supp. 743.

J. Bennett Johnston, Jr., Shreveport, La., Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Baton Rouge, La., William P. Schuler, Asst. Atty. Gen., State of Louisiana, Louis H. Padgett, Jr., Dist. Atty., Bossier Parish, La., for appellants.

Norman C. Amaker, New York City, St. John Barrett, Albert S. Pergam, Attys., Dept. of Justice, Washington, D. C., Jesse N. Stone, Jr., Shreveport, La., Jack Greenberg, Sheila Rush, New York City, for appellees.

Ford E. Stinson, Benton, La., amicus curiae.

John Doar, Asst. Atty. Gen., Edward L. Shaheen, U. S. Atty., Harold H. Greene, David Rubin, Joel M. Finkelstein, Attorneys, Department of Justice, Washington, D. C., for appellee-intervenor.

Before BROWN, BURGER,* and WISDOM, Circuit Judges.

WISDOM, Circuit Judge:

This Court has had to deal with a variety of reasons that school boards have managed to dredge up to rationalize their denial of the constitutional right of Negro school children to equal educational opportunities with white children. This case presents a new and bizzare excuse. Here the alleged reason for the admitted discrimination is that the Negro children are "federal children"; they are children of parents in uniform who are stationed at Barksdale Air Force Base. Barksdale is a United States defense base in Bossier Parish—a federal enclave. The hair-splitting argument the Board has to live with is that the Fourteenth Amendment provides that no state shall "deny to any person *within its jurisdiction* the equal protection of the laws" (emphasis added); since the children live at Barksdale, they are not persons within the jurisdiction of the state. As a corollary, Negro children of fathers stationed at Barksdale have no

---

* Of the District of Columbia Circuit, sitting by designation.

right to attend Bossier schools; they are merely permitted to attend schools (Negro schools) by sufferance, permission that may be withdrawn at any time. The Board contends also that since the plaintiffs do not reside in Bossier Parish, they cannot file a class action representing all Negroes who reside in Bossier Parish.

The district court denied the defendant's motion to dismiss. The court granted the plaintiff's motion for a summary judgment and issued an injunction ordering the school authorities to submit a desegregation plan for Bossier public schools. We affirm.

## I.

The district court found that the United States Department of Health, Education and Welfare provided financial aid to the Bossier Parish school system to the amount of nearly two million dollars between 1951 and 1964 under the provisions of 20 U.S.C. §§ 631–645. In return the school board gave various "assurances" to the United States that children of personnel stationed at Barksdale would be admitted to the schools "on the same terms, *in accordance with the laws of the State* in which the school district of such agency is situated, as they are available to other children in such school district. * * *" (Emphasis added.) 20 U.S.C. § 636(b) (1) (F). The court found also that subsequent to the passage of the Civil Rights Act of 1964, the school board accepted payments from the United States amounting to half a million dollars for operation of its schools during the year 1964–65.

■■ The able trial judge, in an opinion we adopt as part of the opinion of this Court, held that the plaintiffs have standing to sue:

"[Although] these assurances do constitute a contractual agreement * * * [a]ll Louisiana laws providing for segregation in public schools were declared unconstitutional in Orleans Parish School Board v. Bush, 242

F.2d 156, (5 Cir. 1957) cert. denied, 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed. 2d 1436 (see also Bush v. Orleans Parish School Board, 188 F.Supp. 916 (E.D.La.1960), aff'd per curiam 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806). These Louisiana laws subsequently were repealed. See La. Acts 1960, 1st Ex. Sess., Nos. 39 and La. Acts 1962, No. 128, § 1. We find *no* Louisiana law presently in effect which requires the school boards of this State to maintain segregated schools * * *. Defendants by their contractual assurances have afforded rights to these federal children as third-party beneficiaries concerning the availability of public schools. Such rights are identical in weight and effect to those rights possessed by children who are entitled to attend Bossier Parish schools simply because of residence instead of by contract. ¶ Having thus obligated themselves defendants are now estopped by their contractual agreement, and their acceptance of federal funds paid pursuant thereto, to deny that plaintiffs are entitled to the same rights to school attendance as are resident children. * * * ¶ We must further find that the board's acceptance of funds for maintenance and operation of schools during the 1964–65 school year shows that defendants intended to abide by that contract by continuing to provide education for federal children. This acceptance constituted a further ratification of the contract by which defendants agreed to provide such education, and, therefore, it acted as a ratification of the assurances given when the construction funds were received."

■■ The court distinguished United States v. Bossier Parish School Board, W.D.La.1963, 220 F.Supp. 243, aff'd per curiam, 5 Cir. 1964, 336 F.2d 197 and United States v. Madison, 5 Cir. 1964, 326 F.2d 237 holding that the United States could not force desegregation of a school system by specifically enforcing the assurances extracted under 20 U.S.C.

§ 636(b) (1) (F) from school boards receiving federal funds:

"*Both bases for these decisions were changed by the Civil Rights Act of 1964.* By Section 601 of that Act Congress expressly prohibited racial discrimination in any program receiving federal financial assistance, thus negating its original intention to provide funds without disturbing racial classifications. When defendants received and accepted federal funds for maintenance and operation of their schools under 20 U.S.C.A. §§ 236–244 after the passage of the Civil Rights Act of 1964, they became bound by Section 601 and now are *obligated* to provide the education for which the payments were received, without racial discrimination. (Emphasis by the Court) * * * ¶ Consequently, plaintiffs are entitled to bring this class action either under Section 601 of the Civil Rights Act of 1964 or under the contractual assurances by which defendants are estopped to deny them the same rights to attend desegregated schools as are possessed by children of Negro residents of Bossier Parish."

## II.

For good measure, we add a few observations to the district court's opinion.

■ ■ A. Even if the school board were under no legal obligation to provide public education to children of military personnel on the air base, it could not provide that education subject to an unconstitutional condition. See Hanover Fire Ins. Co. v. Harding, 1926, 272 U.S. 494, 47 S.Ct. 179, 71 L.Ed. 372; Wheeling Steel Corporation v. Glander, 1949, 337 U.S. 562, 69 S.Ct. 1291, 93 L.Ed. 1544. The plaintiffs here had been admitted to the school system, but had been denied the opportunity to transfer from a Negro to a white school. Once the plaintiffs had been admitted to the school system, they had a constitutional right to a desegregated education, and have standing to enforce that right—free of any unconstitutional condition precedent.

■ B. United States v. Madison County Board of Education has a narrow scope. Here the plaintiffs rely on the "assurances" only to establish their right to attend the Bossier Parish school system. They do not rely on this frail reed to establish their right to a desegregated education. To establish *that* right, they rely on the Constitution. We think it clear that once the parish has accepted funds under these federal programs, it may not then deny the plaintiffs' right to attend school. Simkins v. Moses H. Cone Memorial Hospital, 4 Cir. 1963, 323 F.2d 959, cert. denied 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659; cf. Flagler Hospital, Inc. v. Hayling, 5 Cir. 1965, 344 F.2d 950; Smith v. Holiday Inns of America, Inc., 6 Cir. 1964, 336 F.2d 630; United States v. Sumter County School Dist. No. 2, E.D.S.C. 1964, 232 F.Supp. 945. And once the plaintiffs have established their right to attend school in the system, their standing to assert their constitutional right to equal protection follows automatically. The key point is that here individuals are suing to enforce a national constitutional right. In the *Madison County* case, on the other hand, the United States sued to desegregate the schools. The United States was either 1) attempting specifically to enforce the assurance demanded by 20 U.S.C. § 636 (b) (1) (F), or 2) attempting to protect the constitutional rights of persons not parties to the suit. The suit was brought before Title IV of the Civil Rights Act of 1964 provided the necessary statutory foundation for the Attorney General to sue to assure individuals of the constitutional right to a desegregated education. The Court's ruling therefore was limited in scope to the proper method for the assertion of contractual, not constitutional, rights. Contract rights are not involved in this case.

C. Finally, section 601 of the Civil Rights Act of 1964 provides:

No person in the United States shall, on the ground of race, color, or nation-

al origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 42 U.S.C. § 2000d.

The defendants argue that this section is a mere statement of policy, and that section 602's administrative remedies are the only means by which it may be enforced. Section 601 states a reasonable condition that the United States may attach to any grant of financial assistance and may enforce by refusal or withdrawal of federal assistance. But it also states the law as laid down in hundreds of decisions, independent of the statute. In this sense, the section is a prohibition, not an admonition. In the absence of a procedure through which the individuals protected by section 601's prohibition may assert their rights under it, violations of the law are cognizable by the courts. See Texas & Pacific Ry. v. Rigsby, 1916, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874, Steele v. Louisville & N.R.R., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. The Bossier Parish School Board accepted federal financial assistance in November 1964, and thereby brought its school system within the class of programs subject to the section 601 prohibition against discrimination. The Negro school children, as beneficiaries of the Act, have standing to assert their section 601 rights.

For the reasons given by the district court and for additional reasons, any one of which is sufficient to dispose of the Board's opera bouffe motion, we hold that these plaintiffs have standing to assert their right to equal educational opportunities with white children. "Negro children in the public schools have a constitutional right to have the public school system administered free from * * * segregation." Bush v. Orleans Parish School Board, 5 Cir. 1962, 308 F.2d 491, 499.

The judgment of the district court is affirmed.