**The UNITED STATES of America for the Benefit of and on Behalf of Matthew GLYNN et al., Plaintiffs-Appellants,**

v.

**CAPELETTI BROTHERS, INC., a Florida Corporation, et al., Defendants-Appellees.**

No. 78–2031.

United States Court of Appeals, Fifth Circuit.

July 23, 1980.

Ira J. Kurzban, Marvin Kurzban, Miami, Fla., for plaintiffs-appellants.

Seyfarth, Shaw, Fairweather & Geraldson, William R. Radford, Stuart A. Goldstein, Miami, Fla., for defendants-appellees.

Before MORGAN, ANDERSON and RANDALL, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

Section 1 of the Davis-Bacon Act, 40 U.S.C. § 276a,[1] provides that certain federal construction contracts shall contain a provision stating that laborers and mechanics are to be paid no less than the wages prevailing in the community where the construction work is to be performed. Matthew Glynn and Steven C. Octaviano filed a class action under this section seeking to recover wages which they claimed had been wrongfully withheld by their employer. The District Court for the Southern District of Florida, 448 F.Supp. 66, held that section 1 did not authorize a private remedy and dismissed appellants' action for lack of jurisdiction. The principal question for review is whether section 1 impliedly creates a private right

of action in favor of wage earners who have been aggrieved by their employer's failure to pay locally prevailing wages.

I.

In October 1975 Capeletti Brothers, Inc. entered into a contract with the Miami-Dade Water and Sewer Authority to construct a sludge treatment facility at Virginia Key, Miami, Florida. This project was financed in part by the federal government through a grant from the Environmental Protection Agency. As a condition to obtaining a contract to work on this project, both Capeletti Brothers, the general contractor, and each of its subcontractors agreed to comply with the provisions of the Davis-Bacon Act, 40 U.S.C. § 276a et seq., as well as other federal statutes and executive orders.[2] In another provision of the contract the contractors agreed to pay laborers and mechanics no less than the prevailing Wage Determinations established by the Florida Department of Commerce in accordance with section 215.19 Florida Stat-

---

1. Subsection (a) of 40 U.S.C. § 276a provides:

   (a) The advertised specifications for every contract in excess of $2,000, to which the United States or the District of Columbia is a party, for construction, alteration, and/or repair, including painting and decorating, of public buildings or public works of the United States or the District of Columbia within the geographical limits of the States of the Union, or the District of Columbia, and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State, in which the work is to be performed, or in the District of Columbia if the work is to be performed there; and every contract based upon these specifications shall contain a stipulation that the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work, unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual relation-

   ship which may be alleged to exist between the contractor or subcontractor and such laborers and mechanics, and that the scale of wages to be paid shall be posted by the contractor in a prominent and easily accessible place at the site of the work; and the further stipulation that there may be withheld from the contractor so much of accrued payments as may be considered necessary by the contracting officer to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract be paid laborers and mechanics on the work and the rates of wages received by such laborers and mechanics and not refunded to the contractor, subcontractors, or their agents.

   Subsection (b) of 40 U.S.C. § 276a defines the term "wages" and describes the methods of payment of both regular and overtime pay.

2. The "Advertisement for Bids" states that

   [b]idders must comply with the President's Executive Order No. 11246 and No. 11375 which prohibit discrimination in employment regarding race, creed, color, sex, or national origin; Title VI of the Civil Rights Act of 1964; the Davis-Bacon Act; the Anti-Kickback Act; the Contract Work Hours and Safety Standards Act; and the Occupational Safety and Health Act of 1970.

utes. In the event that the federal and state prevailing wage rates disagreed, an addendum to the contract specified that "the higher rate shall apply."

Appellants Glynn and Octaviano are ironworkers who were employed by Independent Steel Erectors, Inc., a subcontractor assigned the steel reinforcement work at the sludge treatment facility. Appellants filed this class action [3] contending that they and other ironworkers employed at the facility had been misclassified as laborers by their employers and, as a result, had been paid below both the federal and state prevailing wage rates for ironworkers. Appellants asserted federal claims under section 1 of the Davis-Bacon Act, 40 U.S.C. § 276a, and section 2 of the Miller Act, 40 U.S.C. § 270b. In addition appellants, invoking pendent jurisdiction, asserted state law claims for breach of contract, unjust enrichment, and fraud.

The district court dismissed appellants' Miller Act claim on the ground that suits on the payment bond required by that act can be brought only under contracts for the construction of public works "of the United States." 40 U.S.C. § 270a. Since this construction project was merely federally assisted, the court ruled that the Miller Act was inapplicable.[4] The court did agree with appellants that the Davis-Bacon Act, by virtue of the Federal Water Pollution Control Act, 33 U.S.C. § 1372,[5] was applicable to the project. Nevertheless, the court determined that appellants' Davis-Bacon Act claim must also be dismissed because section 1 of that act did not authorize a private right of action in favor of appellants. Having found no basis upon which to predicate federal jurisdiction,[6] the court dismissed appellants' pendent state law claims.

Prior to the institution of this action, appellants requested the Department of Labor to initiate an investigation of charges that Independent Steel had paid appellants below the prevailing wage rates required by the contract.[7] Within a month from the date of this request, the Department of Labor notified appellants that an investigation would be made and, if violations were found to have occurred, an attempt would

---

**3.** The complaint named Capeletti Brothers, its surety, and its subcontractors as defendants.

**4.** Appellants have not challenged this ruling on appeal.

**5.** 33 U.S.C. § 1372 requires the Administrator of the Environmental Protection Agency to

take such action as may be necessary to insure that all laborers and mechanics employed by contractors or subcontractors on treatment works for which grants are made under this chapter shall be paid wages at rates not less than those prevailing for the same type of work on similar construction in the immediate locality, as determined by the Secretary of Labor, in accordance with the Davis-Bacon Act . . . .

See 29 C.F.R. § 1.1 and Appendix A, No. 16 (1979).

**6.** The complaint alleged that federal jurisdiction existed under 28 U.S.C. § 1331 and 28 U.S.C. § 1337. The court ruled that it lacked federal question jurisdiction under 28 U.S.C. § 1331 since appellants individually failed to allege damages in excess of $10,000. Following the dismissal of appellants' Davis-Bacon Act claim, the court ruled that it lacked jurisdiction pursuant to 28 U.S.C. § 1337 since no act of Congress regulating commerce was involved.

**7.** Appellants also sought state administrative relief pursuant to Florida Statutes § 215.19 contending that they had been paid less than the state prevailing wage rate specified in the contract. Although the state hearing officer agreed that, under the terms of the contract, Independent Steel was obligated to pay state prevailing wages, he determined that subsection (4) of section 215.19 deprived the state of jurisdiction over appellants' claim. Section 215.19(4) (repealed 1979) provides in relevant part:

[P]rovided, however, that the provisions of this section shall not be applicable to any construction or contracts for public works with respect to which prevailing wage rates are required to be established pursuant to federal authority.

The hearing officer reasoned that while the parties had *contractually* agreed to pay Florida wage rates if they exceeded the federally determined rates, state jurisdiction did not exist since the contractors working on the project were subject to the provisions of the Davis-Bacon Act. In granting Independent Steel's motion to dismiss, the hearing officer stated that, "[i]f the parties can not obtain enforcement from the federal authority, they must sue in the appropriate court on the contract." (Emphasis added).

be made to recover back wages from Independent Steel. Although the Department of Labor was aware that appellants were also seeking relief in federal district court, it refused to defer its investigation due to the pending litigation.[8] On May 5, 1978, the Department of Labor advised Capeletti Brothers (1) that the Department's investigation disclosed violations by Independent Steel in failing to pay the applicable prevailing wage rates and (2) that funds were being withheld from the funds due Capeletti Brothers to cover the payment of back wages due to the employees of Independent Steel. Independent Steel requested a hearing, and in October 1978 the Secretary of Labor entered into a settlement agreement with Capeletti Brothers and Independent Steel concerning the wage dispute. Under the terms of the settlement agreement, Matthew Glynn and Steven C. Octaviano received the full amount of back wages owed to them by Independent Steel. With one or two exceptions, the remaining 28 ironworkers employed by Independent Steel received only a percentage of their computed back wages. The Administrative Law Judge in charge of the case approved the settlement and entered a judgment disposing of "all wage claims made by the Secretary [of Labor] on behalf of employees of Respondent" Independent Steel.[9]

Appellants raise two arguments on appeal. First, appellants assert that the dis-

trict court erred in refusing to imply a private right of action under section 1 of the Davis-Bacon Act, 40 U.S.C. § 276a. Second, appellant argues that irrespective of the court's decision on the federal claim, the court erred in dismissing appellants' pendent state law claim.

## II.

Possessing no legislative or policy-making authority, a federal court can recognize a cause of action only if it has been created by statute. It follows, therefore, that the sole basis for judicially inferring a private right of action from a statute that does not expressly provide for one is a finding by the court that Congress intended to create a private right. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (TAMA); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 703, 99 S.Ct. 1946, 1961, 60 L.Ed.2d 560 (1979). Absent such a finding, the court cannot entertain the plaintiff's action even though it determines that a federal statute has been violated and that harm has come to the plaintiff as a result of that violation. In this case we must decide whether, when the Davis-Bacon Act was enacted in 1931 or amended in 1935, Congress intended a private remedy under section 1 of the Act.[10]

8. The Department of Labor, in a letter to counsel for Capeletti Brothers, listed four reasons for refusing to defer its investigation:
   1. The contracting agency or the Department of Labor, Wage and Hour Division, has the primary responsibility to see that predetermined wage rates are paid under the Davis-Bacon and Related Acts.
   2. We must also see that the Contract Work Hours Standards Act has been complied with. If not, liquidated damages must be computed.
   3. We must request that funds be withheld from the primary contractor when necessary.
   4. Department action must also be considered in our investigation findings.

9. The judgment entered by the Administrative Law Judge does not moot the issues raised on this appeal. Appellants filed an action on behalf of all ironworkers misclassified as laborers and demanded back pay from all contractors

that failed to pay the higher of the state and federal prevailing wage rates. As noted in the text, the settlement agreement applied only to the wage claims against Independent Steel. No federal administrative action was taken against Capeletti Brothers or its other subcontractors. Furthermore, the settlement agreement authorized the payment only of the back wages owed under federal law and has no effect on the state wage claims asserted in the civil action.

10. In *McDaniel v. University of Chicago*, 548 F.2d 689 (7th Cir. 1977), *cert. denied*, 438 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978), the Seventh Circuit addressed this same question. The court found "that implying a private right of action in the Davis-Bacon Act is necessary to effectuate the intention of Congress in passing the statute." *Id.* at 695. We find ourselves in disagreement with the Seventh Circuit. In our view neither the language nor the history of the Davis-Bacon Act favor the implication of

When seeking to determine if Congress meant more than it said when it enacted a particular statute, we look to established principles of statutory construction. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), a unanimous Supreme Court listed four factors it considered relevant in determining whether a private remedy is implicit in a statute not expressly providing one:

> First, is the plaintiff "one of a class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the Plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted). While we have cautioned against a mechanical application of these four criteria, this court continues to employ the *Cort* analysis as a useful tool for discerning legislative intent. *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1078 (5th Cir. 1980), *petition for cert. filed*, 48 U.S.L.W. 3769 (May 5, 1980). Using *Cort* as our guide, we see little evidence that Congress intended to grant a private right of action under section 1.

1. *Especial benefit.*

The threshold question under *Cort* is whether the plaintiff is one of the class for whose especial benefit the statute was enacted. This question is answered by looking to the language of the statute itself. *Cannon v. University of Chicago, supra*, 441 U.S. at 689, 99 S.Ct. at 1953, 60 L.Ed.2d at 571; see *TAMA, supra*, 444 U.S. at 16,

100 S.Ct. at 245, 62 L.Ed.2d at 152; *Touche Ross & Co. v. Redington, supra*, 442 U.S. at 568, 99 S.Ct. at 2485, 61 L.Ed.2d at 91 (1979).

Section 1 of the Davis-Bacon Act establishes a minimum wage requirement for laborers and mechanics employed under certain federal construction contracts. The language, indeed the purpose, of the statute clearly reveals that laborers and mechanics are the principal beneficiaries of the act.[11] Recognizing that Congress intended to benefit laborers and mechanics, however, does not establish that Congress intended additionally that section 1 would be enforced through private litigation. *TAMA, supra*, 444 U.S. at 17, 100 S.Ct. at 246, 62 L.Ed.2d at 153. Therefore, in applying the first *Cort* factor, the Supreme Court has considered not merely whether the statute was intended to benefit a particular class but whether Congress intended to "create a federal right in favor of the plaintiff." *Cort v. Ash, supra*, 422 U.S. at 78, 95 S.Ct. at 2088. To this end, the Court has focused on the "right—or duty—creating language of the statute" as "the most accurate indicator of the propriety of implication of a cause of action." *Cannon v. University of Chicago, supra*, 441 U.S. at 690 n.13, 99 S.Ct. at 1954; *Rogers v. Frito-Lay, Inc., supra*, 611 F.2d at 1079.

In *Cannon* the petitioner asserted a cause of action under a statute providing that "No person in the United States shall, on the basis of sex," be subjected to discrimination under any federally assisted education program. Section 901 of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. In holding that this language favored the implication of a private right of action, the Court distinguished the language of an alternative proposal that Congress passed over when it adopted section 901:

a private remedy. Furthermore, we believe that the most recent Supreme Court cases discussing the implication doctrine support our position.

11. Laborers and mechanics are not, however, the act's exclusive beneficiaries. The act was also intended to protect local contractors from unfair competition and to prevent the disturbance of the local economy. See H.R.Rep. No. 308, 88th Cong., 1st Sess. 2 (1963); S.Rep. No. 963, 88th Cong., 2nd Sess. 2 (1964).

The Secretary shall not make any grant . . . nor . . . enter into any contract with any institution of higher education . . . unless the . . . contract . . . for the grant . . contains assurances satisfactory to the Secretary that any such institution . . will not discriminate on the basis of sex.

*Cannon v. University of Chicago, supra,* 441 U.S. at 693 n. 14, 99 S.Ct. 1955 n. 14. Although this proposed statute was written to prohibit sex discrimination in education and, therefore, to benefit persons who suffer such discrimination, it fails to confer a federal right on the benefited class.

There are obvious similarities between the language used in the proposed statute and the language found in section 1 of the Davis-Bacon Act. Section 1 provides in relevant part that

[t]he advertised specifications for every contract in excess of $2,000, to which the United States . . . is a party, for construction, alteration, and/or repair . . . of public buildings or public works of the United States . . . and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city . . . in which the work is to be performed . . . .

40 U.S.C. § 276a(a). Neither section 1 of the Davis-Bacon Act nor the proposed Title IX statute cited in *Cannon* focuses on the benefited class in its right—or duty—creating language. Instead, in both instances the duty created by the statutory language is imposed upon federal agencies to ensure that certain provisions are included in federal contracts. Once this duty is performed, the statutory obligation is satisfied. Thus, under the specific language of the Davis-Bacon Act, the benefits flowing to laborers and mechanics are derived indirectly and not as a result of any right conferred directly upon their class.

In *Rogers v. Frito-Lay, Inc., supra,* 611 F.2d 1074, this court considered the propriety of inferring a private right of action from section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793. That section, which bears a striking resemblance to section 1 of the Davis-Bacon Act, provides:

Any contract in excess of $2,500 entered into by any Federal department . . . shall contain a provision requiring that . . . the party contracting with the United States shall take affirmative action to employ . . . qualified handicapped individuals . . . .

Applying the first *Cort* criterion, this court found that the statutory language did not create a federal right in favor of the plaintiff:

The statutory language does not imply on its face any intention to endow the handicapped with a direct suit after suffering handicap-based discrimination. It merely requires those who give out federal contracts to obligate contractors to take affirmative steps to employ and advance handicapped persons. The duty it *directly* creates is imposed upon federal departments and agencies, not upon contractors.

611 F.2d at 1079 (emphasis added). This observation is equally applicable here. Although laborers and mechanics are clearly the intended beneficiaries of the Davis-Bacon Act, section 1 does not confer a federal right directly on the benefited class. The first *Cort* factor, therefore, does not militate in favor of the implication of a private right of action.

2. *Legislative intent.*

The legislative history of the Davis-Bacon Act contains no evidence of congressional intent either to create or deny private parties a right of action under section 1. As the Supreme Court has observed, however, "the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question." *Cannon v. University of Chicago, supra,* 441 U.S. at 694, 99 S.Ct. at 1956, 60 L.Ed.2d at 574. Therefore, the inability of appellants to cite

legislative history that indicates an intent to confer a private remedy does not automatically undermine their position. *TAMA, supra,* 444 U.S. at 17–21, 100 S.Ct. at 246–47, 62 L.Ed.2d at 153–54.

Appellants first argue that the limited private remedy authorized by section 3 of the Davis-Bacon Act, 40 U.S.C. § 276a–2(b), indicates a congressional intent to grant a similar right of action under section 1. This argument is unacceptable. Section 3 is only one of several enforcement provisions expressly created by the Davis-Bacon Act. Under section 1, the contracting officer is authorized to withhold from the contractor sufficient funds to reimburse workmen for any difference between the locally prevailing wages and the wages they actually receive. Section 3(a), 40 U.S.C. § 276a–2(a), permits the Comptroller General to pay back wages to workmen directly from these withheld funds. If the withheld funds are insufficient to make reimbursements in full, laborers and mechanics are entitled under section 3(b) to bring suit in federal court on the Miller Act bond required for federal contracts, 40 U.S.C. § 270a. The statute also provides administrative penalties for contractors that violate the act's provisions. Under section 2, 40 U.S.C. § 276a–1, the government may terminate the contract of a contractor who fails to pay the prevailing wages specified in the contract. In addition, section 3(a) permits the Comptroller General to debar a contractor from future contract awards for a three-year period.

We believe that it is reasonable to presume that Congress intended these provisions to be the exclusive methods of enforcing the duties and obligations imposed by the act. "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'" *TAMA, supra,* 444 U.S. at 19–20, 100 S.Ct. at 247, 62 L.Ed.2d at 154–55 (citations omitted). This principle—*expressio unius est exclusio alterius*—is directly applicable here. The Davis-Bacon Act expressly creates an elaborate scheme for enforcing compliance with the obligations imposed by section 1. In view of these express procedures, "it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" *Id.* 444 U.S. at 20, 100 S.Ct. at 247, 62 L.Ed.2d at 155, *quoting Cannon v. University of Chicago,* 441 U.S. at 740, 99 S.Ct. at 1980, 60 L.Ed.2d at 603 (Powell, J., dissenting).

The presumption created by this principle of statutory construction must yield "to persuasive evidence of a contrary legislative intent." *Id.* 444 U.S. at 20, 100 S.Ct. at 247, 62 L.Ed.2d at 155. Appellants find such evidence by reading the Davis-Bacon Act *in pari materia* with the Portal-to-Portal Act of 1947, 29 U.S.C. § 251 et seq. Section 6 of that act, 29 U.S.C. § 255, imposes a two-year limitations period on any action for unpaid minimum wages under the Fair Labor Standards Act, the Walsh-Healey Act, or the Davis-Bacon Act.[12] Appellants assert that this provision cannot refer to the explicit private remedy found in section 3(b) of the Davis-Bacon Act, 40 U.S.C. § 276a–2(b), since the suits on the contractors bond authorized by that section are subject to a one-year statute of limitations under 40 U.S.C. § 270b. Following the lead of the Seventh Circuit in *McDaniel v. University of Chicago, supra,* 548 F.2d 689, appellants argue that unless a private right of action is inferred from section 1 of the Davis-Bacon Act, the Portal-to-Portal Act's two-year statute of limitations is a nullity.

Congress enacted the Portal-to-Portal Act in response to the Supreme Court's

---

**12.** Section 7 of the Portal-to-Portal Act, 29 U.S.C. § 256, contemplates class actions under the Davis-Bacon Act. Appellants argue that this provision supports their position that Congress assumed that the Davis-Bacon Act contains a private remedy. Consistent with our discussion below, however, we believe that class action provision refers to actions under 40 U.S.C. § 276a–2(b), the explicit private right of action authorized by the Davis-Bacon Act. The enactment of 29 U.S.C. § 256, therefore, cannot serve as a basis for implying a private remedy under section 1.

decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). *See Unexcelled Chemical Corp. v. United States*, 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953). *Mt. Clemens* held that certain activities engaged in by employees prior and subsequent to the scheduled working hours constituted working time within the scope of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. In enacting the Portal-to-Portal Act Congress sought to curtail the flood of suits that followed the *Mt. Clemens* decision.

The limitations provision of the Portal-to-Portal Act was not subjected to extensive legislative scrutiny at the time of enactment.[13] The Senate Bill (S.70) proposed to exempt employers from liability for portal-to-portal wages under the FLSA. S.Rep. No. 37, 80th Cong., 1st Sess. 1, 48 (1947). The bill included a two-year statute of limitations for FLSA actions. In contrast, the House Bill (H.R. 2157) included, in addition to the FLSA, the Walsh-Healey and Davis-Bacon Acts within its coverage. H.R.Rep. No. 71, 80th Cong., 1st Sess. 5 (1947). The House Bill also contained a one-year statute of limitations, and thus was consistent with the limited private enforcement provision of the Davis-Bacon Act. 40 U.S.C. § 276a–2(b) and 40 U.S.C. § 270b(b). Although the Senate committee considering H.R. 2157 agreed to the House Bill's expanded coverage, it retained the two-year statute of limitations proposed in S.70. The conference committee recommended the two-year statute of limitations, H.R.Rep. No. 326, 80th Cong., 1st Sess. 13–24 (1947), and this provision was enacted.

There is persuasive evidence that the Senate committee overlooked entirely the one-year statute of limitations applicable to the limited private remedy authorized by section 3(b) of the Davis-Bacon Act. In its report on H.R. 2157 the Senate committee stated that "there is no limitation provision in either the Walsh-Healey or the Davis-Bacon Acts." S.Rep. No. 48, *supra* at 42. The Senate committee intended to correct this

supposed deficiency by "setting up a 2-year statute of limitations" under the Portal-to-Portal Act. *Id.* at 51. As the Solicitor General observed in a brief to the Supreme Court in the petition for certiorari in *McDaniel*, "[t]his legislative history lends no support to the conclusion of the court below that Congress assumed the existence of an implied cause of action to enforce the Davis-Bacon Act. It indicates instead that Congress thought that, consistent with the purpose of the Portal-to-Portal Act, it was preventing the bringing of stale suits under existing explicit statutory provisions." Brief for the United States as Amicus Curiae at 21–22, *University of Chicago v. McDaniel*, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978), *denying cert. in* 548 F.2d 689 (7th Cir. 1977). We agree with this position and, therefore, reject appellants' assertion that the two-year statute of limitations is a nullity unless a private right of action is inferred from section 1.

Furthermore, even if Congress did assume that section 1 authorizes a private right of action to enforce its provisions, the assumption does not establish that the previous Congress did in fact create such a remedy. When Congress enacted the Portal-to-Portal Act it sought to remedy the "unexpected liabilities"[14] that had been imposed on employers as a result of the Supreme Court's *Mt. Clemens* decision. *Mt. Clemens* involved a suit by *employees* to recover overtime compensation under section 16(b) of the FLSA, 29 U.S.C. § 216(b) (provides a private right of action to enforce FLSA). At the time of the *Mt. Clemens* decision and the enactment of the Portal-to-Portal Act, no *employee* suit had ever been successful (if any had ever been brought) under section 1 of the Davis-Bacon Act. It is obvious, therefore, that the need for remedial legislation did not exist with respect to section 1. "An assumption is not a law," *Rogers v. Frito-Lay, Inc., supra*, 611 F.2d at 1082, especially where, as here, the assumption does not appear to have been warranted.

---

**13.** Brief for the United States as Amicus Curiae at 20, *University of Chicago v. McDaniel*, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978), *denying cert. in* 548 F.2d 689 (7th Cir. 1977).

**14.** 29 U.S.C. § 251(a).

We are unwilling to accept appellants' assertion that the Portal-to-Portal Congress assumed that the Davis-Bacon Act implicitly provides a private remedy for violations of section 1.

3. *Legislative scheme.*

Under the third *Cort* factor we must determine whether implying a private remedy is consistent with the underlying purposes of the legislative scheme.

As we have noted, the Davis-Bacon Act provides an elaborate administrative scheme and a limited private action to enforce compliance with the prevailing wage requirements of section 1. Appellants argue that these explicit remedies are ineffective and "may often result in the lack of *any* recovery to the effected [sic] construction workers." The facts in this case belie appellants' assertion. Prior to the institution of their civil action, appellants sought administrative relief from the Department of Labor against Independent Steel. In October 1978 the Administrative Law Judge entered a judgment approving a settlement agreement entered into by the Department of Labor, Independent Steel, and Capeletti Brothers. Thus, the employees who sought administrative relief have clearly benefited from the action taken by the Secretary of Labor pursuant to the Davis-Bacon Act. Moreover, appellants have not established that the express administrative remedies devised by Congress are an ineffective means for remedying section 1 violations. We conclude, therefore, that a private right of action is not "necessary" to effectuate the purposes of the statutory scheme. *Chrysler Corp. v. Brown,* 441 U.S. 281, 316–17, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979); *J. I. Case v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964).

Appellants suggest that even if a private remedy is not necessary to the realization of Congress' purpose, such a remedy would provide a useful supplement to the existing administrative enforcement procedures. It is true that implying a private right of action under section 1 would provide another, perhaps useful, enforcement procedure. It is not, however, our task or our privilege to make policy. "The ultimate question [in implication cases] is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 578, 99 S.Ct. at 2490, 61 L.Ed.2d at 97; *Rogers v. Frito-Lay, Inc., supra,* 611 F.2d at 1085 ("To determine the message to be found in the void of express Congressional statements, we resort neither to our own notions of sound policy nor to our concept of what best suits the public weal.").

4. *State law.*

Finally, we must decide "whether implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the states." *Cannon v. University of Chicago, supra,* 441 U.S. at 708, 99 S.Ct. at 1963, 60 L.Ed.2d at 582.

In this case we are asked to find a private remedy in a statute establishing minimum wage requirements for certain federal construction contracts. The prevailing wage provision in these contracts was mandated by federal law and involves matters of federal policy. We agree with appellants that the proposed cause of action is not one "traditionally relegated to state law, in an area basically the concern of the states." *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2088.

The dispositive question is whether Congress intended to create a private remedy as part of section 1. In our view neither the language, the history, nor the structure of the statute supports the implication of a private right of action in this case.

### III.

In their second argument appellants contend that the district court erred in concluding that the dismissal of the federal claim required the dismissal of the state claims.

Under the doctrine of pendent jurisdiction, a federal court has the constitutional power to hear a state law claim if it is closely related to plaintiff's federal claim. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). It is clear, however, that a district

court has wide discretion to refuse to hear a pendent claim. In discussing the discretionary nature of pendent jurisdiction, the Supreme Court has identified certain circumstances that should persuade a court to dismiss a state claim: "Certainly, if the federal claims are dismissed before trial, even though not in substantially a jurisdictional sense, the state claim should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. This case presents such a situation. The district court did not err in declining to hear appellants' pendent claims.

AFFIRMED.