The MONTGOMERY IMPROVEMENT ASSOCIATION, INC., et al., Plaintiffs-Appellants,

v.

The UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al., Defendants-Appellees.

No. 79–1484.

United States Court of Appeals, Fifth Circuit.

May 18, 1981.

Roger C. Rosenthal, Martin E. Sloane, Washington, D. C., Solomon S. Seay, Jr., Montgomery, Ala., for plaintiffs-appellants.

Donald V. Watkins, pro se.

Barbara L. Gordon, Robert E. Kopp, U. S. Dept. of Justice, Washington, D. C., for U. S. Dept. of HUD and the Secretary of HUD.

Smith, Bowman, Thagard, Crook & Culpepper, Charles M. Crook, Julia S. Waters, Montgomery, Ala., for Emory Folmar et al.

Before HILL, KRAVITCH and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

The Montgomery Improvement Association, Inc., an organization of low and moderate income black residents of the City of Montgomery and four individual low income black city residents brought this action for declaratory and injunctive relief against the Department of Housing and Urban Development (HUD) and the City of Montgomery.[1] Plaintiffs allege that neither the City's applications nor its implementations of its 1975, 1976, and 1977 plans of improvement are in compliance with the Housing and Community Development Act of 1974 ("Community Act").[2] Their complaint is based on the wrongful allocation of some of the funds to activities not principally benefiting them as the special beneficiaries of the Community Act, and on the failure of the City to address appropriately the needs of lower-income people in the statutorily required Housing Assistance Plan (HAP). These deficiencies are claimed to be racially discriminatory and to violate three separate federal statutes: The Community Act, Title VI of the Civil Rights Act of 1964,[3] and the Federal Fair Housing Act (Title VIII of the Civil Rights Act of 1968).[4] Plaintiffs seek a declaration that violations occurred, an injunction which prohibits the expenditure of further funds, and a mandatory order that reallocates expended funds and directs compliance with the law as to unexpended and future funds.

On motions the district court held that plaintiffs' case under the Fair Housing Act was time barred for the years 1975 and 1976 but sustainable for the year 1977. The court also held that plaintiffs did not have a private cause of action against any of the defendants under either the Housing and Community Development Act or Title VI of the Civil Rights Act. The federal defendants did not urge upon the district court that plaintiffs could not maintain a private cause of action under either of these latter Acts. These defendants apparently concede that plaintiffs have a direct cause of action against the agency pursuant to the Administrative Procedure Act, as the same agency did in a similar lawsuit. *See Davis v. United States Department of Housing and Urban Development*, 627 F.2d 942, 945 (9th

---

1. Named defendants also included in their official capacities the Secretary of HUD, HUD's Birmingham, Alabama, Area Office's Director, Montgomery's Mayor, Director of the City's Department of Planning and Development, and six City Council members.

2. 42 U.S.C. § 5301 *et seq.*

3. 42 U.S.C. § 2000d *et seq.*

4. 42 U.S.C. § 3601 *et seq.*

Cir. 1980). The federal defendants do urge that plaintiffs should be required to proceed first against the other defendants and that the action against them be deferred. We leave that question to the district court.

The principal issue presented by this appeal is whether the Community Act provides plaintiffs with a private cause of action against the City of Montgomery and the other defendants. A secondary issue is whether such a cause of action would exist under Title VI, and, finally, if there is no viable action under either Act, whether the district court's ruling was correct when it determined that the statute of limitations had barred plaintiffs' cause of action under the Fair Housing Act. We hold that plaintiffs have a private cause of action under the Community Act and Title VI and we reverse. We deem it unnecessary to consider plaintiffs' rights under the Fair Housing Act.

The Housing and Community Development Act of 1974 was passed in response to Congress' concern for the "critical social, economic, and environmental"[5] conditions existing in the nation's cities, and its declaration that the future depends "on the establishment and maintenance of viable urban communities as social, economic, and political entities."[6] The statute consists of a new system of federal assistance under HUD's administration and consolidates the previous grant-in-aid efforts into a single block grant program.[7] The block grant approach was chosen by the drafters "primarily to insure that federal funds would be used with a priority to eliminate slums and blight and to upgrade and make the na-

tion's cities more livable, attractive and viable places in which to live."[8]

The Act permits local units of government to apply for grants for a plan of local improvements and insures rapid processing by HUD with minimum interference or "input" from the federal agency. Greater responsibility for the details of the plan and compliance with the Act is placed upon the applicant. The application must contain assurances that the program will be conducted and administered in conformity with Title VI of the Civil Rights Act and the Secretary may accept a certification from the applicant that it has in fact complied.[9] Additionally, the city must submit a Housing Assistance Plan which surveys and assesses the housing needs of lower-income persons, specifies a realistic annual goal for the number of persons assisted or units to be renovated or constructed, and has the objectives of revitalizing and stabilizing neighborhoods, avoiding undue concentrations of assisted persons, and assuring public facilities for proposed projects.[10]

Plaintiffs complain that the HAP submitted by the City required the expenditure of funds in violation of the primary objective of developing viable urban communities which provide decent housing and a suitable living environment, "principally for persons of low and moderate income."[11] In criticizing the HAP the complaint demonstrates through a detailed analysis of the census tracts in Montgomery that the low and moderate income persons are concentrated in certain areas, and that these persons are overwhelmingly black in number.

---

**5.** 42 U.S.C. § 5301(a).

**6.** 42 U.S.C. § 5301(b).

**7.** Among the programs consolidated were: The Public Facilities Loan Program authorized by Title II of the Housing Amendments of 1955, the Open Space Program authorized by Title VII of the Housing Act of 1961, the Planning Advance Program authorized by Section 702 of the Housing Act of 1954, Basic Water and Sewer Facilities, Neighborhood Facilities and Advanced Land Acquisition Programs authorized under Title VII of the Housing and Urban Development Act of 1965, the Urban Renewal Code Enforcement and Neighborhood Develop-

ment Program authorized by Title I of the Housing Act of 1949, and the Model Cities Program authorized by Title I of the Demonstration Cities and Metropolitan Development Act of 1966.

**8.** U.S.Code Cong. & Admin.News at 4273, 4274 (1974).

**9.** 42 U.S.C. § 5304(a)(5) and (b)(4).

**10.** 42 U.S.C. § 5304(a)(4).

**11.** 42 U.S.C. § 5301(c).

It is stated that Montgomery has traditionally had racially segregated neighborhoods that are perpetuated by the Housing Assistance Plan, in violation of the Act. It is claimed that the HAP aids homeowners and not renters and provides only minimum assistance for the elderly and for single women. Furthermore, they say that the Housing Assistance Plan, whatever good it might contain, has not been implemented by the City. Plaintiffs, in their four-count complaint, enumerate many other acts of noncompliance.

Plaintiffs charge HUD with wrongful approval of the plan and inadequate verification of the implementation in violation of 42 U.S.C. § 5304(c). Plaintiffs conclude their complaint by alleging that defendants' statutory violations breach the anti-discriminatory section of the Community Act which provides:

> No person in the United States shall on the ground of race, color, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity funded in whole or in part with funds made available under this chapter.

42 U.S.C. § 5309(a), and Title VI which provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d, and 42 U.S.C. § 5301 *et seq.*, which is the Fair Housing Act. This latter Act is a comprehensive statute which forbids discrimination in practically every aspect of the housing industry—sale, rental, financing, etc.

The issue formed is whether plaintiffs may pursue a private cause of action or whether their recourse is to wait for HUD to act pursuant to 42 U.S.C. §§ 5309 and 5311. Taken together, these two latter statutes provide that if a recipient of funds discriminates in violation of § 5309(a), the Secretary (after seeking compliance from the recipient) may (1) terminate payments, (2) reduce payments, (3) limit payments to certain uses, or (4) refer the matter to the Attorney General who may bring a civil action to enjoin the discrimination and/or to recover payments made. If the Secretary terminates, reduces, or limits payments, the recipient may appeal the action to the United States Court of Appeals having jurisdiction. None of these remedies would provide any relief comparable to that being sought by the individual plaintiffs in this case.

■ In holding that there was no private cause of action the district court relied upon *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). There, Ash as a stockholder of Bethlehem Steel sued Cort, Chairman of the Board of Bethlehem, to recover for the corporation an alleged illegal political contribution made by the corporation at Cort's direction. The Supreme Court decided that the proscriptions in the election law against certain types of contributions were intended to benefit the public and not persons in plaintiff's category. The Court further held that the Federal Election Commission was the sole enforcer of the statute. The Supreme Court advanced a test of four factors that should be considered in assessing whether a plaintiff may bring a private action. These factors are:

(1) Is the plaintiff one of the class for whose especial benefit the statute was enacted?

(2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one?

(3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

(4) Is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?

The district court in this case determined that the first question should be answered in the affirmative in that the plaintiffs

were members of the class especially benefited by the Community Act. In answer to questions 2 and 3 the Court determined that Congress did not intend to create a private right of action and that it would be inconsistent with the statutory purpose and scheme of the Act to allow a private right of action. The district court held that the fourth criteria was not applicable to a federal housing statute.

The district court was of a similar opinion that a private right of action did not exist under Title VI and added as an additional reason that the plaintiffs should have exhausted their administrative remedies as a condition precedent to filing suit under Title VI, and that the plaintiffs had failed to do so.

■ The plaintiffs in this case have a private cause of action for the following reasons: *First*, the Supreme Court in *Cannon v. The University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), decided unequivocally that a private cause of action could be maintained by a woman who alleged exclusionary discrimination because of her sex by defendant educational institution and the receipt of federal funds by the institution for educational programs. This was found to be in violation of § 901(a) of Title IX of the Education Amendments of 1972.[12] That section is identical to the non-discriminatory proscription contained in the Community Act. The Supreme Court has put to rest the issue of the existence of a private cause of action where Congress enacts legislation for a particular purpose and forbids the expenditure of federal funds in a manner that will discriminate against members of designated classes in the execution of that purpose. Members of those groups, either individually or as a class, may bring an action in federal court to seek redress for such discrimination.

At the time the district court decided this case and found no private cause of action existed in favor of the plaintiffs, the Supreme Court had not decided *Cannon*. The Supreme Court, in reversing the decision of the circuit court of appeals, described three reasons which we will summarize. The court of appeals had decided that the administrative schemes for relief provided under the Amended Education Act, Title IX, provided sufficient relief for the enforcement of the non-discriminatory proscriptions in the statute. Title IX provided the same administrative scheme as does the Community Act which we consider here. That administrative scheme is described on page 294, *supra*. The Supreme Court determined in *Cannon* that such relief, as terminating or reducing payments or referring the matter to the Attorney General, was insufficient to vindicate the rights of an individual such as Ms. Cannon. Next, the Supreme Court found that the court of appeals had not given sufficient attention to the legislative history and previous court decisions. When considered together they disclosed that a number of courts had held that Title VI provided a private cause of action, and Congress, in passing Title IX, had discussed and considered these holdings by the courts. *See* footnotes 16–21 of *Cannon*. Lastly, the Supreme Court made a *Cort v. Ash* analysis which resulted in a determination that the factors predominated in favor of a private cause of action.

The *second* reason we reverse the district court is that precedent in our circuit requires us to so hold if we give to the antidiscriminatory section of the Community Act the same meaning our court gave to Title VI in *Bossier*.[13] Since the relevant

---

12. 20 U.S.C. § 1681(a).

13. In *Bossier Parish School Board v. Lemon*, 370 F.2d 847 (5th Cir. 1967), a panel composed of Judge Wisdom, who wrote the opinion, and then-Judge (now Chief Justice) Burger, sitting by designation, and Judge Brown, established that a private cause of action under Title VI could be maintained where a school board re

cipient of federal funds refused to admit black children.

Since *Bossier* our circuit has considered the subject of private causes of action many times and in 1980 alone decided the following cases: *Smith v. Cotton Brothers Baking Company, Inc.*, 609 F.2d 738 (no private cause of action— Consumer Credit Protection Act); *Rogers v. Frito-Lay, Incorporated*, 611 F.2d 1074 (no pri

parts of the Community Act and Title VI statutes are identical in language and purpose except for the inclusion in the Community Act of the word "sex," we can do nothing but give the Community Act the same meaning our circuit has given to Title VI in *Bossier*. Further, the Community Act specifically provides (see footnote 9) that communities accepting funds shall administer the program in conformity with Title VI.

The opinion in *Bossier*, in holding that the beneficiaries of the Act could sue for admission to the school system which was federally funded, discussed the fact that the Administrative Procedure Act remedies did not afford adequate relief for the discriminated persons. We call attention to the treatment of this subject in *Bossier*:

> The defendants argue that this section is a mere statement of policy, and that section 602's administrative remedies are the only means by which it may be enforced. Section 601 states a reasonable condition that the United States may attach to any grant of financial assistance and may enforce by refusal or withdrawal of federal assistance. But it also states the law as laid down in hundreds of decisions, independent of the statute. In this sense, the section is a prohibition, not an admonition. In the absence of a procedure through which the individuals protected by section 601's prohibition may assert their rights under it, violations of the law are cognizable by the courts. See *Texas & Pacific Ry. v. Rigsby*, 1916, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874, *Steele v. Louisville & N.R.R.*, 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. The Bossier Parish School Board accepted federal financial assistance in November 1964, and thereby brought its school system within the class

of programs subject to the section 601 prohibition against discrimination. The Negro school children, as beneficiaries of the Act, have standing to assert their section 601 rights.

*Bossier Parish School Board v. Lemon*, 370 F.2d 847 (5th Cir. 1967), at page 852.

Our *third* reason for concluding that the anti-discriminatory provisions of the Community Development Act permit the bringing of a private cause of action comes from an analysis of the *Cort v. Ash* factors. The first of these is whether the plaintiff is one of a class for whose especial benefit the statute was enacted. In *Cort* the Supreme Court found that the congressional restrictions on corporate expenditures in elections were not intended for the benefit of the stockholders of the spending corporation, which is the class into which Mr. Ash fell. We again allude to the fact that the district court in this case found plaintiffs to be members of the class Congress intended to be especially benefited.

The second *Cort* inquiry is whether there is any indication of legislative intent, explicit or implicit, either to create a private cause of action or to deny one. After pointing out that the federal election statute reflected no intention to vest in corporate shareholders a federal right to damages for a violation of the act, the Court went on to say:

> [I]n situations in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling.

*Cort v. Ash, supra*, 422 U.S. at 82, 95 S.Ct. at 2090. It is clear from the Housing and

vate cause of action—federal contract requirements pertaining to handicapped persons); *Camenisch v. University of Texas*, 616 F.2d 127 (private cause of action—statute specifically forbids exclusion of handicapped persons from receiving benefits—rehearing en banc denied); *United States of America v. Capeletti*, 621 F.2d 1309 (no private cause of action—Davis-Bacon Act claim); *Belluso v. Turner*, 633 F.2d 393 (no private cause of action under Federal Commu-

nications Act); and *Rivers v. Rosenthal & Co.*, 634 F.2d 774 (no private cause of action—Commodity Exchange Act).

Camenisch is the only case where action was brought under a statute that forbad discrimination or exclusion against a class of individuals in the use of federally appropriated funds by a recipient. *Camenisch* relies upon *Bossier* and *Cannon* as well as *Campbell v. Kruse*, 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977).

Community Development Act that Congress granted "persons of low and moderate income" certain rights and expressly forbad discrimination or exclusion from benefits based on race, color, national origin, or sex. There is nothing in the Act to suggest any congressional purpose to deny a private cause of action.

*Cort's* first two factors require the granting of a private cause of action when plaintiffs are in a class Congress intended to benefit and there is no denial by Congress of such a cause of action.

Although unnecessary, we shall briefly discuss the third and fourth factors. *Cort's* third factor suggests that courts must be on the alert to determine whether private causes of action are necessary to make effective the Congressional purpose. We have briefly, at p. 294, described 42 U.S.C. §§ 5309 and 5311 which prescribe remedies available to the Secretary of the Department of Housing and Urban Development and to the Attorney General, but there is nothing in the Act that prescribes an administrative remedy for grievances of persons situated as the plaintiffs in this case. (Compare *United States of America v. Capeletti Brothers, Inc., supra* note 13, for a discussion of the elaborate administrative scheme and limited private action afforded laborers to enforce compliance with the Davis-Bacon Act.) The fourth *Cort* factor requires the court to determine whether the plaintiff has a remedy created by state law, and, if so, that militates against permitting a private cause of action in federal court. Here, of course, plaintiffs would have no state remedy, as Ash had against Cort.

With *Bossier, Cort,* and *Cannon* laying down such clear guidelines, we hold that plaintiffs have a private cause of action under both Title VI and the Community Act. The judgment below dismissing the claims for relief for the years 1975 and 1976 is vacated. We remand for trial of the issues arising in all three years, 1975, 1976, and 1977.

VACATED and REMANDED.

JAMES C. HILL, Circuit Judge, dissenting:

Once again this court, while "interpreting" an Act of the United States Congress, has seen fit to create a private cause of action where none has been provided. Once again I dissent. I have expressed my general disapproval of such judicial action elsewhere, *see Wilson v. First Houston Investment Corp.,* 566 F.2d 1235, 1243–45 (5th Cir. 1978) (Hill, J., dissenting), *vacated and remanded,* 444 U.S. 959, 100 S.Ct. 442, 62 L.Ed.2d 371 (1979), so I will only briefly indicate why I find it particularly inappropriate here.

Courts can, wisely or otherwise, permit private parties to premise an action upon a statute which does not expressly authorize a private lawsuit. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 441 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). Courts do so by deciding that the language and history of that statute imply that Congress intended to create a private enforcement action (or perhaps, as Justice Powell has suggested, by deciding that "Congress absentmindedly forgot to mention an intended private action." *Cannon v. University of Chicago,* 441 U.S. at 741, 99 S.Ct. at 1981 (Powell, J., dissenting)). The framework for making such a decision, ably outlined by the majority, at pages 294, 295 *supra,* was established in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975); the *Transamerica* and *Cannon* decisions emphasize that the court's primary focus should be on the intent of Congress.

In my opinion, nothing in the language or history of the Housing and Community Development Act of 1974, 42 U.S.C. § 5301, et seq. compels the conclusion that Congress contemplated or condoned the type of lawsuit which confronts us today. Indeed, sections 5309 and 5311 suggest to me that Congress envisioned an entirely different enforcement scheme. Appellants earnestly insist that the administrative enforcement

scheme prescribed in the Act does not apply to the lawsuit before us. The statutory enforcement scheme, appellants argue, "provides remedies which HUD may decide to pursue against a community which is receiving community development funding, but which is not carrying out the program set forth in its application, or otherwise is failing to carry out its commitment." Appellants' Brief at 34. The lawsuit here, they insist, challenges "HUD's own unconditional approval of an illegal application." *Id.* Appellants may be correct. I fail to understand, however, why we ought to conclude that Congress intended the courts to create a different enforcement scheme simply because the enforcement scheme Congress expressly created does not embrace appellants' claim. *But cf. Cannon v. University of Chicago*, 441 U.S. at 706 n.41, 99 S.Ct. at 1962–63 n.41.

Additionally, section 5304(a)(6) suggests that Congress did contemplate participation by private citizens in the statutory scheme. It seems particularly patronizing for this court to conclude that Congress would explicitly provide for private participation in one aspect of the statutory scheme but only implicitly contemplate private participation in the enforcement aspect of the statute. I am not suggesting that this is a conclusive indication of Congressional intent; it does, however, seem a compelling indication.

Nor do I think that appellants satisfy the first of the *Cort* factors; they do not impress me as members " 'of the class for whose *especial* benefit the statute was enacted ....' " *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2087 (quoting *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916)). Although the Act is replete with references to "persons of low and moderate income," it is clear to me that such persons are more accurately described as incidental, not especial, beneficiaries. The Act was passed for the especial benefit of entire urban communities. Any who has a legitimate interest in the welfare of Montgomery is as entitled as another to whatever remedy may be found. When it is realized that *all* are to benefit, it clearly appears that none is the "especial beneficiary."

Furthermore, as a factual matter and quite apart from the issue raised by the first *Cort* factor, both the record and appellants' brief demonstrate that persons of low and moderate income were indeed the principal (albeit incidental) beneficiaries of Montgomery's development plan. The complainants challenge relatively small percentages of the city's total expenditures, expenditures which would seem to inure to the benefit of the entire urban community despite the fact that they were not earmarked to develop areas where persons of low or moderate income reside. The Act facially requires no more.

Finally, appellants argue that section 5309(a), the section prohibiting discrimination in any program funded under the Act, supports their assertion that they are entitled to bring this private action. They point out that section 5309(a) essentially tracks the language of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. (1976) and that courts have held that the latter section implies a private cause of action. *See Bossier Parish School Bd. v. Lemon*, 370 F.2d 847 (5th Cir. 1967); *see generally Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Appellants are correct. However, appellants have failed to assert evidence upon which it could be found that either the federal or municipal defendants here have discriminated against them. As I have said, the evidence before us demonstrates that the appellants were the principal beneficiaries of Montgomery's community development program. There is no evidence that they have been "excluded from participation in" or "denied the benefits of" the program because of their "race, color, national origin, or sex ...." *Cf. Cannon v. University of Chicago*, 441 U.S. at 1980, 99 S.Ct. at 1949 (in which it was settled that Cannon "was excluded from participation in the respondents' medical education programs because of her sex.") Thus I believe that even if section 5309(a) implies *a* private cause of action, it does not imply *this* private cause of action.

So I dissent.